IN THE CIRCUIT COURT FOR ROANE COUNTY, TENNESSEE

ROANE COUNTY, TENNESSEE,
THE CITY OF KINGSTON, TENNESSEE,
THE CITY OF HARRIMAN TENNESSEE,

        **Plaintiffs,**

V.

        No. 2019-CV-78

        **JURY DEMANDED**

JACOBS ENGINEERING GROUP, INC. and
THE TENNESSEE VALLEY AUTHORITY,

        **Defendants.**

## SUMMONS

**TO:**  Tennessee Valley Authority % James Chase
     400 W. Summit Hill Drive
     Knoxville, TN 37902

     You are hereby summoned and required to serve upon **James K. Scott,**
plaintiff's attorney, whose address is: **625 Market Street, 14th Floor, Knoxville, TN
37902,** a true copy of the answer to the complaint which is herewith served upon you,
within thirty (30) days after service of this summons upon you, exclusive of the day of
service. If you fail to do so, judgment by default will be taken against you for the relief
demanded in the Complaint.

     Issued this 1ᵗʰ day of May , 2019.

          Ann Goldston
          CLERK

          Amy Brown
          DEPUTY CLERK

## NOTICE

TO THE
DEFENDANT(S):

Tennessee law provides a four thousand dollar ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of this court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. TCA 26-2-114

### SERVICE INFORMATION

**TO THE PROCESS SERVER: TENNESSEE VALLEY AUTHORITY, 400 W. SUMMIT HILL DRIVE, KNOXVILLE, TN 37902.**

### RETURN

I received this Summons on the day of , 2019.

I hereby certify and return that on the day of , 2019, I: C. Young    M served this Summons and a Complaint on Defendant, in the following manner:
to legal dept.

[ ] failed to serve this Summons within thirty (30) days after its issuance because:

C. Young 2584
PROCESS SERVER
5-31-2019

Filed
ANN GOLDSTON Time 4:25pm
By Amy Brown D.C.
5 - 7 , 2019

## IN THE CIRCUIT COURT FOR ROANE COUNTY, TENNESSEE

| | |
|---|---|
| ROANE COUNTY, TENNESSEE, THE CITY OF KINGSTON, TENNESSEE, THE CITY OF HARRIMAN TENNESSEE, <br><br> Plaintiffs, <br><br> v. <br><br> JACOBS ENGINEERING GROUP, INC. and THE TENNESSEE VALLEY AUTHORITY, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

No. 2019-CV-78

JURY DEMANDED

### COMPLAINT

Plaintiffs, by and through counsel, pursuant to applicable law and the Doctrine of *Parens Patriae*, file this Complaint and state as follows:

### PREAMBLE

With regard to all allegations contained below, Plaintiffs submit that Roane County and its Plaintiff municipalities continue to be wonderful communities with superlative people, services, educational institutions, recreational programs, parks and natural locations, *despite* the extensive harm, and continuing and imminent threat of harm, to the life and health of Plaintiffs' citizenry and the sustainability of their respective economies caused directly by Defendants' reprehensible and unlawful conduct which harm has been further aggravated by the lies told by these Defendants regarding the safety of fly ash.

Plaintiffs, therefore, file this lawsuit to seek injunctive relief and monetary damages, in relevant part, to relieve and abate the ongoing "temporary nuisance" TVA currently creates by continuing to release toxic and radioactive hazardous substances from the coal ash waste into the

environment, now known to include the drinking water aquifers for Plaintiffs' citizens and thousands of Tennessee residents. Plaintiffs aver that this continuing and ongoing "temporary nuisance" poses an imminent danger to the life and health of Plaintiffs' citizenry and thousands of Tennesseans who drink from the aquifers TVA is currently contaminating. TVA's unlawful disposal of coal waste in this manner continues in violation of a federal and state law and a specific governmental mandate that TVA clean up and contain its solid waste and prevent such releases.

In addition to the environmental harm and deleterious human health effects Defendant's have caused, the negative economic stigma assigned to the Plaintiffs' and their communities as a result of the the spill continues to cause tremendous economic harm to Plaintiffs' businesses and land values on a county-wide scale as a result of the public perception that Plaintiffs' businesses and communities are environmentally tainted. The extent of this economic harm, like the related harm to human health and life, has been compounded by Defendants' subsequent fraudulent conduct in concealing the true extent of the hazards to which Plaintiffs have been exposed solely to enable TVA to continue to engage in commercial activities and make over $10 billion in annual revenues per year by producing energy and selling coal ash by-products while masking its unlawful conduct and allowing the government and TVA's ratepayers to pay to clean up the disaster TVA — at Jacobs' direction and under its guidance — has made.

## THE PARTIES

1. Plaintiff Roane County, Tennessee, has a population of citizens of approximately 53,000 souls. Plaintiff has a duty to provide a wide range of services to its citizens and residents, including services for families and children, public health and safety, public assistance,

law enforcement, and emergency care. Similarly, the remaining Plaintiffs, the City of Kingston and the City of Harriman, are obligated to provide a similar range of services to their citizens and residents.

2. Plaintiffs jointly bring this action on behalf of their citizens, employees, and residents and, as such, are entitled to represent all the rights of the communities and the citizenry thereof. In making certain payments, thereby incurring damages on behalf of its employees and residents, Plaintiffs did not act as volunteers, but rather acted from necessity and under the compulsion and responsibility to protect their citizens' individual and collective interests, or as *parens patriae*. Consequently, all Plaintiffs and their citizens have suffered grave economic damages as a direct and proximate result of Defendants' actions and conduct.

3. Pursuant to *Tenn. Code Ann.* § 5-1-103, Roane County is a corporation and the members of the legislative body assembled are the representatives of the County and its citizens.

4. The Cities of Harriman and Kingston are each lawful governing bodies and have all powers to file actions on behalf of the entities themselves and their respective citizens based upon powers vested in them by the Tennessee State Constitution and the Tennessee Code, including but not limited to *Tenn. Code Ann.* § 7-54-101, *et seq*.

5. Defendant Jacobs Engineering Group, Inc. ("Jacobs") is a foreign corporation with its principal place of business in Dallas, Texas. At all times relevant herein, Jacobs Engineering Group, Inc., was and continues to be licensed to do business, and was and is doing business, in the State of Tennessee, Roane County, and elsewhere, and is directly liable, along with the co-defendant to the extent described herein, for all actions which

have harmed or otherwise caused injury to Plaintiffs and their citizenry. Jacobs may be served through its Registered Agent for Process, CT Corporation System, 800 South Gay Street, Suite 2021, Knoxville, Tennessee 37929-9710.

6.     TVA is a private corporation which, according to Justice Elena Kagan in the United States Supreme Court's landmark decision on April 29, 2019 in the case Thacker v. The Tennessee Valley Authority, (CITE), became a public utility as an "accident of history;" and, therefore, is **not** the government and is **not** entitled to sovereign immunity, except in the few instances in which such power is expressly conferred by Congress in the Tennessee Valley Authority Act of 1933. The Court also held that TVA is not an entity to which the Federal Tort Liability Act is applicable so it may be sued like any other private corporation for the harm alleged by the Plaintiffs. TVA operates around 60 power plants and provides electricity to more than nine million people in seven states generating in excess of $10 billion in annual revenues. TVA may be served with process at 400 West Summit Hill Drive, Knoxville, TN 37902.

## STATEMENT OF THE CASE

7.     The events in this lawsuit took place primarily in the area surrounding the TVA KIF Superfund Cleanup Site, which Defendants referred to as an asset recovery instead of a disaster relief effort because the operation itself was commercial in nature to recover TVA's assets and sell them for profit.

8.     The nuisance from TVA's commercial "asset recovery" efforts occurred, and continues to occur, to the present day unabated, due in large part to the hidden ongoing recent leaching of coal and fly ash constituents into the groundwater supplying the drinking water for the

surrounding communities, in addition to the airborne delivery and ingestion of particulate matter from the site.

9. The major spill and subsequent releases and contamination received limited publicity as what is now considered to be the largest environmental disaster in United States history. The KIF catastrophe was quickly eclipsed by the timing of the BP oil spill in the Gulf of Mexico, which gave Defendants the public relations reprieve to shirk their promised responsibilities of restoring the environment and ensuring the safety of Plaintiffs' citizenry. Instead Defendants continue to operate unchecked while doing little to restore the reputation and damage to negatively stigmatized Plaintiffs and the surrounding community.

10. Defendants' individual and concerted conduct was and is an ongoing and continuing dangerous nuisance causing significant economic harm and personal injury compounded by the negative stigma now attached to the Plaintiffs' communities, which must be abated and rectified.

11. The nuisance could and should have been limited in geographic and environmental scope impacting a smaller area of the county but for the actions of the Defendants.

12. Defendants are subject to and bound by continuing obligations of the EPA's Administrative Order of Consent ("EPA AOC").

13. By accepting the EPA Agency's determinations in the EPA AOC, pursuant to 28 U.S.C. § 1738 requires federal courts to adhere to the doctrine of state agency decisions and requires even federal courts to give the determinations full faith and credit as verified by

the United States Supreme Court in *Kramer v. Chemical Constr. Corp.*, 456 U.S. 461,466 (1982) ; *Tenn. v. Elliot*, 478 U.S. 788, 796 (1986).

14. The EPA Order was reinforced by a jury verdict related to the exact factual issues in this case regarding liability and both the Court and Jury rendered merit based factual decisions through the Memorandum opinion in 2012 (*Chesney v. TVA*) as it relates to nuisance and the Jury Verdict in 2018 as it relates to dangers to human health (*Adkisson v. Jacobs Engineering Group, Inc*.).

15. Defendants are subject to and bound by continuing obligations of the contract by and between the defendants ("Jacobs / TVA contract").

16. Due to the Defendants' actions, as further described below, the entire Roane County community was harmed beyond what would have occurred if a competent and responsible remediator was performing the task(s) required with integrity and efficiency, and without the callous and negligent, if not reckless, malicious, or intentional disregard for human health and life employed by Defendants.

17. As a result of the Defendants' conduct, each of the Plaintiffs and their citizens have been damaged economically and medically, and each has further suffered fear of exposure to hazardous carcinogenic substances, aggravation and inconvenience.

18. Defendants' actions, as described herein, are on-going and increase the damages suffered by Plaintiffs on a daily basis.

19. Jacobs was the prime contractor at the KIF cleanup and was legally required to abide by the EPA AOC # 04-2009-3766, the Jacobs / TVA contract, and the site wide safety and

health plan ("SWSHP") to manage the site clean up and provide a safe environment for the surrounding community that could be exposed to the constituents of the fly ash due to activity act the KIF toxic spill remediation site.

20. At all relevant times, Jacobs acted outside the scope of direction of the United States Environmental Protection Agency ("EPA"), the Tennessee Department of Environment and Conservation ("TDEC"), existing law, and the authority conferred by contract with TVA, and at all times contrary to the SWSHP.

21. The SWSHP was to be strictly followed as a mandate by all who worked on or near the site.

22. Jacobs was to provide complete safety oversight for TVA and the EPA at the KIF site.

23. The SWSHP was intentionally made mandatory for the safety of the public.

24. Defendant Jacobs first drafted, and was the primary author, of the SWSHP.

25. TVA and Jacobs crafted a bonus and compensation structure that encouraged the pursuit of profit over considerations of safety, TVA designated and spent approximately $350,000,000.00 of the contemplated $1.18 Billion it charged off immediately after the spill for dredging, processing, mining, and disposal of the ash versus the $29,000,000.00 spent on safety - a mere fraction of the money the TVA planned to spend on the recovery of its commercial assets for resale. In other words, TVA spent more than 12 times the money on asset recovery than it spent on worker and public safety.

26. Jacobs was legally required at all times to operate independently and was obligated to use its expertise to employ qualified individuals with professional competence to protect the public.

27. The personnel provided by Jacobs lacked the requisite expertise.

28. Jacobs intentionally and recklessly deviated from the scope of authority set forth in the TVA / Jacobs contract, the EPA AOC and the SWSHP.

29. Jacobs' actions were in direct conflict with these orders and contracts.

30. A limited number of TVA agents or employees unduly influenced decisions regarding Jacobs' obligations to disregard safety in the pursuit of profit.

31. The TVA as owner of the facility and lessee of the United States Government negligently and recklessly selected Jacobs as the "prime contractor" for the site, in relevant part, to perform safety at KIF.

32. TVA hired, but negligently and recklessly failed to properly interact with and supervise, Jacobs in its performance of the non-delegable duties the EPA AOC, TVA to fulfill, such that, despite any plausible deniability it may claim, TVA is charged with Jacobs' knowledge, has at least constructive notice if not actual knowledge, and is imputed with Jacobs' knowledge of the hazardous conditions of the KIF site and the dangerous exposure of the community surrounding the site.

33. The grossly negligent and reckless inactions by TVA under the circumstances giving rise to the largest environmental disaster in U.S. history, proximately caused or contributed to all allegations of injury contained herein.

34. The grossly negligent and reckless inactions by TVA were egregious breaches of duty TVA owed to the Plaintiffs.

35. Jacobs was legally required, and had a duty not to deviate from its legal and contractual obligations no matter who from within the TVA sought to influence them.

36. The EPA, the TVA, individual residents, citizens, and nearby landowners reasonably relied to their detriment upon Jacobs to act in good faith and with proper competence, knowledge, integrity, professional skill, and independence free from improper influence regarding safety at the KIF.

37. Jacobs acted negligently, recklessly, maliciously, and intentionally with callous disregard for the health and lives of the citizens of Roane County, Tennessee.

38. Jacobs was aided in their actions and inaction by certain agents of the TVA, including, but not limited to, Ms. Anda Ray.

39. By law, Jacobs and all agents for TVA were the entities responsible for providing accurate information about the safety of fly ash to all of Roane County, the State of Tennessee, and the TVA Board Of Directors.

40. The duty to accurately and truthfully report to Roane County, the State of Tennessee and the TVA Board of Directors gives rise to the claims of the Plaintiffs herein for the

protection of its respective citizens' interest or *parens patriae* and the claims and demand for restitution and recovery of the damages caused by Defendants' conduct.

41. Defendants were required to report accurately and truthfully regarding all work and communication subject to the requirements of the EPA AOC and to comply with other applicable laws, subject to criminal penalty.

42. Jacobs adopted the SWSHP in part to appropriately disseminate truthful and accurate information relevant to cleanup of this environmental contamination/remediation project to the public during the asset recovery.

43. Jacobs adopted the SWSHP in part to appropriately and properly monitor the air for the benefit of the TVA and Roane County communities.

44. Jacobs adopted the SWSHP in part to appropriately and properly monitor the soil for the benefit of the TVA and Roane County communities.

45. Jacobs adopted the SWSHP in part to appropriately and properly monitor the surface water for the benefit of the TVA and Roane County communities.

46. Jacobs adopted the SWSHP in part to appropriately and properly monitor the groundwater for the benefit of the TVA and Roane County communities.

47. Jacobs' mandatory obligation was to protect the taxpaying citizens of Roane County as a highest priority.

48. Jacobs further had an affirmative duty to protect the general area in order to protect and restore portions of property and environment damaged by the KIF ash spill while preventing harm to citizens.

49. The TVA / Jacobs' contract was one in which the TVA contractually bargained for and reasonably relied upon Jacobs' independent decision-making for safety and management of the entire site as the "independent contractor."

50. All actions described herein were negligently, but more likely than not, recklessly, maliciously, or intentionally committed by Jacobs upon Plaintiffs.

51. Jacobs' actions were outside the contracted scope and knowledge of the TVA Board of Directors.

52. Jacobs' actions were done, in part, to receive approximately sixty three million dollars ($63,000,000.00) in contract payments and bonuses, a fraction of which was paid for safety over the commercial and income-producing activities contained therein (i.e., the mining of precious metals for resale from the spilled ash).

53. Jacobs' actions and inactions violated existing law, the EPA AOC, the TVA / Jacobs' contract requirements, the SWSHP.

54. Despite Jacobs' duties under this multi-million dollar agreement with TVA, it acted outside the scope of the TVA Board of Directors, the EPA AOC and exceeded its contractual authority by manufacturing, manipulating, destroying, falsifying, and fraudulently concealing air, surface water, soil, and groundwater monitoring results.

55.     Further, upon knowledge, information and belief, Jacobs made numerous representations
        to TVA and others that fly ash was not harmful to human health. These representations,
        which are contrary to the SWSHP documentation adopted, created, and possessed by
        Jacobs and TVA, violated the law because they were patently false, as evidenced by the
        Material Safety Data Sheets for fly ash and bottom ash readily available to Defendants
        since 2001.

56.     Jacobs and certain agents of TVA, without the knowledge of the TVA Board of Directors,
        knowingly and intentionally lied to the plaintiffs, their citizenry and communities about
        the safety of fly ash constituents. Defendants did so to conceal the true extent of the
        hazardous nature of and danger to the citizens in the surrounding communities from the
        contaminants in the constituents of the spilled coal ash and the potential for harmful
        effects on the environment and human life and health.

57.     These described actions fell outside the scope of the authority conferred on Jacobs by the
        TVA Board of Directors, the EPA Order of Consent, and the law.

58.     Jacobs' actions and inactions contributed to community aggravation and inconvenience,
        loss of governmental property values, lost tax revenues, and certain health care and
        emergency response costs, and other economic damages described in this lawsuit.

59.     Jacobs' intolerable and outrageous conduct includes violations of law, including, but not
        limited to, ongoing continuing obligations pursuant to the Administrative CERCLA Order
        # 04-2009-3766, the EPA AOC, the law, and matters of contract that have continued to
        adversely affect the Plaintiffs up to the present day.

60. TVA concealed from the Plaintiffs and obstructed any investigation into the truth by illegally destroying documentary and video evidence from the site which would have and should be presumed to have proven the hazardous conditions at the site and the representative character of the exposure.

61. Jacobs colluded and conspired with the TVA to commit the same transgressions to conceal documentary and video evidence, and Plaintiffs should receive the benefit of an adverse inference against Defendants and mandatory instruction to the trier of fact to assume such video evidence would prove Plaintiffs' case in part, if not in its entirety.

62. Defendants have spent large quantities of ratepayer monies attempting to hide the truth regarding the "safety" of fly ash. both in public relations campaigns and attorneys' fees defending their unlawful behavior.

63. Defendants have engaged in fraud, fraudulent concealment, violations of Federal and State statutes and regulations, outrageous conduct, promissory estoppel, and negligent selection and supervision of Jacobs as its Site Wide Safety Contractor, which caused a temporary and ongoing nuisance due to the hidden dangers of the ash and the recent 2018 secret release of high levels of radiation and arsenic from KIF into the Plaintiffs' groundwater. Defendants have further engaged in reckless endangerment, obstruction of justice, and breach of contract as the Plaintiffs were known and intended direct third party beneficiaries to the TVA / Jacobs contract.

64. Jacobs negligently, recklessly, or intentionally altered, destroyed, and mutilated environmental tests required to protect the surrounding communities and induced the public to rely on the flawed and altered information reported.

65.     The EPA required communications related to the spill at KIF and any other releases to be open, honest, responsible, reasonable, scientifically reliable, and done in such a manner that is value laden with honesty regarding the health risk to protect individuals in reasonable proximity to toxic or hazardous substances contained in the ash.

66.     TVA and Jacobs failed to communicate openly, honestly, responsibly, in a scientifically reliable manner, or truthfully, to ensure the communication of the health risks and to protect the health of the individuals in proximity to the toxic and hazardous substances contained in the ash; and, therefore, they failed to comply with their legal or contractual obligations to the rate-paying Plaintiffs and their citizens.

67.     Defendants, individually and in concert, fraudulently concealed the dangers of the fly ash and engaged in outrageous conduct when they individually and collectively told the Plaintiffs the ash was safe.

68.     As a result, TVA, in failing to select a qualified prime contractor or safety contractor with specific extensive experience in the remediation of fly ash spills, breached its promise and legally required duty to the citizens of Roane County, Tennessee, Harriman and Kingston, who are direct third party beneficiaries to the TVA / Jacobs contract and were all exposed and injured as a result of such reprehensible conduct.

69.     TVA was found to have caused the spill by grossly negligent conduct and its own Office of Inspector General ("OIG") determined the TVA was wholly incompetent to store or handle fly ash.

70. Likewise, Jacobs was not qualified or competent to do the job required by the TVA / Jacobs' contract.

71. TVA repeatedly promised to pay the medical expenses and damage to the property for people affected by the spill; yet, TVA has not done so, except after extensive litigation, in which it paid a fraction of what it should have paid based on the information TVA together with Jacobs provided, which is now known to be false.

72. Reasonably relying on TVA's promises, the Plaintiffs and the citizens of Roane County, Kingston, and Harriman, altered their approach to their own healthcare needs to their financial and physical detriment.

73. The misrepresentations and false statements of Jacobs and TVA had the combined effect of covering up information used by physicians to treat Plaintiffs' citizens.

74. Currently the ash is leeching into the groundwater and contains unacceptable levels of numerous health and life-threatening carcinogenic contaminants which are constituents of coal ash.

75. The TVA public relations department, often in conjunction with Jacobs, made representations to citizens and public officials that were fraudulent about the safety of these commercial activities.

76. The fraudulent statements, and more importantly the extremely hazardous nature of coal ash and the extent of the exposure to the surrounding citizens and neighbors of the TVA, were not discovered by Plaintiffs until a jury returned its verdict on November 7, 2018 in *Adkisson*.

77.     Public officials and Roane County citizens previously had reasonably relied on the publicly disseminated information provided by TVA and Jacobs, and are now seeking restitution for the damages caused by the Defendants' lies.

78.     The Defendants conspired to keep secret from the public, their neighbors, the constituents of the fly ash and that the fly ash contained radioactive material all of which is harmful to human health and the Plaintiffs and their citizenry.

79.     The Defendants conspired to keep secret from the public, their neighbors, the constituents of the fly ash knowing that many living nearby would substantially increase the costs of the asset recovery project, given the need for the expenditure of significant amounts of money for medical expenses and testing to relay accurate information to treating physicians to render proper medical care for problems caused by the fly ash.

80.     The promise of truthful disclosure of information was breached by Ms. Anda Ray and in ongoing statements by the TVA's current Public Relations Officer Scott Brooks; and such breaches continue until this day at local Roane County meetings and in the media.

81.     Ms. Ray affirmatively and publicly stated and promised that TVA would pay the medical expenses of those people affected by the spill.

82.     Ms. Ray affirmatively and public stated and promised that the fly ash was safe.

83.     All Plaintiffs' governmental officials tried to protect the citizens of Roane County, but they were continuously lied to, in violation of law, after reasonably relying on Defendants' untruthful statements.

84. These officials reasonably relied upon Defendants' repeated false statements, thus inducing them to refrain from taking legal action against the Defendants to their financial detriment.

85. This reasonable reliance and forbearance by Roane County Officials resulted in harm to the whole community.

86. Had these Defendants conducted themselves in accordance with the law, the health problems and temporary nuisance and stigma, along with the incurred damages, would not have occurred.

87. Considering all allegations in this complaint, it is averred that Jacobs bears primary responsibility because it was the site wide safety contractor designated to independently manage safety at the KIF site; however, TVA has consistently indicated that it intends to pay for Jacobs' liability through an indemnity clause that it says it intends to honor, despite the bad acts by Jacobs already proven and determined by a jury to exist.

88. EPA AOC # 04-2009-3766 established the primary job of Jacobs as the site safety manager to protect human health and comply with law. Jacobs negligently, recklessly, maliciously, intentionally, and indeed outrageously did not protect human health or comply with the law.

89. Unlike other contractors that normally engage in similar forms of contracting, Jacobs, in the present action, acted in direct conflict with federal law and the TVA policy to such a criminally gross extent that it should not be tolerated by any just and civilized society.

90. By engaging in the conduct enumerated in this Complaint, the Defendants committed the following non-discretionary violations:

    a.      42 U.S.C. § 7401, et seq.

    b.      *Tenn. Code Ann.* § 39-13-101;

    c.      *Tenn. Code Ann.* § 39-13-103;

    d.      *The Tennessee State Air Pollution Control Regulations*

    e.      *Tenn. St. Reg.* 1200-3-3;

    f.      *Tenn. St. Reg.* 1200-3-5;

    g.      *Tenn. St. Reg.* 1200-3-8;

    h.      *Tenn. St. Reg.* 1200-3-10;

    i.      *Tenn. St. Reg.* 1200-3-11;

    j.      *Tenn. St. Reg.* 1200-3-12;

    k.      *Tenn. St. Reg.* 1200-3-13;

    l.      *Tenn. St. Reg.* 1200-3-19;

    m.      *Tenn. St. Reg.* 1200-3-22;

    n.      *Tenn. St. Reg.* 1200-3-37;

    o.      *Tenn. St. Reg.* 1400-15-01-.02;

q.    18 U.S.C. § 1961-1968;

r.    33 U.S.C. § 1251 et seq.;

s.    42 U.S.C. § 9601 et. seq.;

t.    42 U.S.C. § 6901 et. seq.;

u.    40 C.F.R. 430(c);

v.    SARA Act Title III (EPCRA) 42 USC § 11001, et seq. *The Emergency planning Community Right to Know* (entitling Plaintiffs to all fines and damages) and related to reasonable response costs Plaintiffs incurred.

w.    *Tenn. Code Ann.* § 50-3-2001 et. Seq.

x.    *Tenn. Code Ann.* § 39-13-103;

y.    *Tenn. Code Ann.* § 39-14-114;

z.    *Tenn. Code Ann.* § 39-14-903;

91.    The effects of continued exposure to such hazardous substances proximately caused exposure of the surrounding citizens to hazardous substances and, as a result, to contract illnesses from which they have suffered significant damages from which some if not all will never recover.

92.    The healthcare costs incurred by these Plaintiffs and citizens are astronomical.

93.     The Defendants' actions caused damages to the Plaintiffs requiring measurable and fair, medical and scientific response costs on behalf of their citizens.

94.     Damages incurred by the Plaintiffs include, but are not limited to, an unfair negligent temporary nuisance incurred by Roane County, Kingston and Harriman.

95.     This temporary nuisance has been enhanced by ongoing negligent leaks of toxins at KIF, other damages from the temporary nuisance created by the Defendants, violations of the ECPRA through SARA Title III, CERCLA, and RCRA, and violating many provisions an Administrative Court Order, including, but not limited to, destroying evidence and witness tampering.

96.     The actions and inactions of Defendants have culminated in extensive harm to the reputation of Roane County, the City of Harriman, and the City of Kingston, visiting each with an unfair stigma causing economic damage.

97.     The actions and inactions of Defendants have culminated in extensive harm to the health of individuals living within an area limited in geographic scope near the spill.

98.     Despite the contamination caused by Defendants, Roane County remains one of the most beautiful and desirable communities in the country.

99.     Defendants' actions have unfairly caused a negative impact upon the whole of Roane County and its municipalities, in relevant part, by their failure to perform their mandated duties in an appropriate manner, if at all, and the creation of the nuisance.

100. The outrageous acts of these Defendants have caused and continue to cause a substantial reduction in the tax revenues for the Plaintiffs that would have been appropriated to the schools, infrastructure, recreation, business ventures, and various other monetary allocations for community development and enhancement, while increasing the costs of those activities and efforts significantly.

101. Defendants provided inadequate responsive medical monitoring in the aftermath of the spill for the citizens of Roane County, especially those approximately 8,000 people living within a reasonable geographic zone of the KIF spill, at great expense to the County and its municipalities.

102. Based on Defendants' own scientific information pertaining to the situs of the spill, there is a high likelihood and probability that the people of the affected region were exposed to high doses of hazardous substances and, as a direct and proximate result, did experience health-related problems from the original 2008 spill from the hazardous fly ash constituents, which continues with the ongoing nuisance crated by each successive spill that continues to occur to this very day.

103. This inadequacy and dishonesty was outside the scope of authority conferred upon the TVA and Jacobs by the EPA Order of Consent and the law.

104. But for the dishonest and reckless actions of the Defendants, the spill would likely not have resulted in a such a danger nor stigma in the perception of environmental uncertainty and resulting harmful effect on Plaintiffs and might have been reasonably confined to a smaller geographic region of Roane County such that the migration of the ash could have been contained and the damages limited.

105.    Defendants disregarded the safety and health of the TVA's neighbors - the Plaintiffs' citizens - and lied about the safety of the coal ash.

106.    But for Defendants' actions and inactions, Plaintiffs would not have suffered the damages, including but not limited to lost revenues to the extent suffered to date, and the people in the radius or danger zone created by the spill would have been informed and their health and property protected.

107.    These ongoing economic losses have been increasingly aggravated by the unconfined hazardous materials at the TVA KIF causing the recent leaks of contaminants into the air, water, and soil surrounding the KIF.

108.    When this ongoing recent environmental pollution and contamination, which has been fraudulently concealed and remains unchecked due to the interference with governmental offices by the TVA and Jacobs, is viewed together with the Defendants' ongoing pattern of dishonesty, it has perpetuated the negative stigma and temporary nuisance and continues to proximately damage Plaintiffs because the ordinary or reasonably prudent person is in an understandable, relatable, reasonably reactionary position of not knowing whether they, their families, employees, pets, livestock or livelihoods are safe when located in proximity to the KIF site.

109.    The stigma and nuisance was created and continues because of Defendants' actions and inactions.

110.    Particularly, contrary to legal and moral principles, Jacobs and a limited number of certain agents of TVA had in their possession manuals for fly ash safety that contained

vital information regarding fly ash toxins and constituents that were not properly disseminated to individuals in Roane County, nor the public, including, but not limited to, medically vulnerable populations - especially children and pregnant women - included in the interests represented by the Plaintiffs.

111.    Internal documents from TVA and Jacobs present a false portrayal of a positive health perception of the disaster and that public perception was more important than protecting human health.

112.    Samples of fly ash were to be collected in such a manner as to minimize litigation and provide "defensible," not reliable, results, and, when results were unfavorable, they were destroyed and reconstructed much later in time with inaccurate data to create the illusion of safety.

113.    The ambient air monitoring at the spill site was critical to knowing whether the communities were protected from exposure to the hazardous constituents of coal ash and there is no reliable air monitoring data from the first year and a half of after the date of the spill.

114.    Additionally, the perimeter fly ash monitors were soaked in water to lower the readings of toxic levels to misrepresent the dangers of inhaling and ingesting the airborne particulates and avoiding of legal penalties while obtaining bonuses for expediency while sacrificing human health and life.

115.    Jacobs and TVA destroyed air and water samples and records of levels of contaminants.

116. Videotape and photos of conditions at the KIF site showing vast amounts of airborne fly ash were destroyed by the Defendants in violation of the EPA AOC, the TVA/Jacobs contract and the law.

117. A prior TVA witness testified in a prior federal proceeding that destroying the videotape and photos of conditions at the site would be outside the scope of the EPA AOC #-04-2009-3766 and the Defendants' ongoing legal and moral obligations.

118. This Order was required to be followed by law, subject to potential criminal penalties, and other laws that forbid such outrageous conduct committed primarily by Jacobs, and certain individuals within TVA.

119. Jacobs went to such an extent to engage in a fraudulent "cover up" and conceal its harmful intent that it hired former critical TVA employees, moved certain witnesses around or out of the country, and unethically solicited and represented fact witnesses with no affiliation to Jacobs to influence testimony.

120. In Defendants' possession were numerous documents that many fly ash constituents are Class A carcinogenic, but this was never effectively disseminated to the Plaintiffs or their citizenry.

121. The Defendants, despite their knowledge, did nothing to prevent exposure to coal ash, particularly fly ash for these Plaintiffs, and instead authorized and disseminated untruthful, misleading, callous, and cavalier statements that were calculated to mislead the public regarding the safety of the hazards and dangers they had caused and increased rather than remediating the disaster.

122.    Statements including "fly ash is so safe you can eat it" were stolen from the defense of other lawsuits involving fly ash that resulted in harm to human health and resulted in findings of liability.

123.    The fact Defendants engaged in studies regarding how much a child could ingest per day to create a harmful effect should allow a reasonable person and certainly a trier of fact to deduce that coal ash is hazardous to one's health - especially the health of one's children.

124.    This same mantra regarding eating fly ash was issued by Defendants so callously and to such an extreme that Defendants endorsed and published statements to that effect to the Plaintiffs and general public, and in emails to the actual decision-makers on site regarding important safety decisions. Those individuals relied on Defendants' statements to make important decisions.

125.    One example of an internal Jacobs-TVA email regarding the safety of fly ash stated: "However, the more you are exposed, the more likely it becomes....that cancer will grow. It's like buying lottery tickets. If you just buy one ticket you probably won't win. If you buy many tickets, your chances increase." Such was the callous disregard for human life that Jacobs subjected Plaintiffs' citizens to the "cancer lottery."

126.    The Jacobs/TVA contract explicitly stated that Jacobs was to protect the public, as a third party beneficiary, as did the EPA AOC and the other laws referenced herein.

127.    Jacobs entered into the business of superfund remediation for monetary profit.

128.    Jacobs engaged in dishonest fraudulent business dealings in pursuit of profit to ensnare the TVA ratepayers fraudulently and economically.

129. The jury in <u>Adkisson v. Jacobs Engineering Group, Inc.</u> found Jacobs breached its contract with the TVA and its duty to keep the workers safe at the KIF site; and, therefore, it reasonably follows that Jacobs did not protect the public at large, either.

130. Defendants' actions were required to be independent, honest, without improper dealings or motives, free from conflict or influence, and to primarily protect human health and the environment.

131. The citizens of the Plaintiffs were within the class of people intended and designated in the EPA AOC and the Jacobs/TVA contract for protection by Defendants.

132. The Defendants breached this direct intended obligation in law and contract to illegally receive federal, state, and ratepayer money as compensation, through the prime contract, change orders, and bonuses based on production and safety measures that were not provided.

133. The Defendants criminally neglected the people they were appropriated money to protect through their illegal enterprise, constituting violations of 18 U.S.C. § 1961-1968, and Plaintiffs request appropriate damages in accordance with the United States Code.

134. A certain number of executives of both Defendants violated their own ethics and directives; and, of particular concern, a certain number of TVA executives claimed that the constituents of fly ash were not harmful to human health, and were indeed safe, even up until the present day — despite TVA signing EPA AOC acknowledging fly ash poses an imminent harm to human health, and TVA now posting warning signs that fly ash is

hazardous in violation of the following provisions of the <u>TVA Executive Code of Conduct</u>, *in pertinent part,* as follows:

I.    **General Principal.** TVA executives will hold themselves, and each other, to the highest standards of integrity, honesty and ethical conduct. ...

III... 2.    Foster a culture of honesty, integrity, and ethical and law-abiding behavior among other Executives and employees.

3.    Take all reasonable measures to achieve responsible use of and control over TVA's assets and resources. All assets and resources are to be used for legitimate business purposes.

4.    Provide constituents with information that is accurate, complete, objective, relevant, timely, and understandable. Assure full, fair, accurate, timely, and understandable disclosure in all filings with regulatory agencies and other public communications. ...

11.    Ensure employees understand their affirmative duty to report actual or suspected violations or laws or ethics requirements and the procedures and mechanisms available to them for reporting.

12.    Maintain a workplace environment that prevents retaliation or reprisals against an employee who in good faith reports actual or suspected violations of law or ethics requirements. Retaliation against employees who report perceived violations and/or who participate in investigations as witnesses or in other capacities violates the law and TVA's policies on whistleblowers, expressing differing views and cooperating with the Office of Inspector General. Such retaliation is prohibited and will not be tolerated.

IV. **Implementation**. TVA Executives are accountable for full compliance with this Code of Conduct....

135.    It was further concealed, as corroborated by TVA agents through deposition, that during the remediation TVA was selling the coal combustion residuals and specifically fly ash from KIF for money in the commercial setting while TVA was acting as if the remediation was solely funded by ratepayer dollars.

136. TVA has classified the costs of remediation a "Regulatory Asset" and TVA decided to recoup the cost of recovering its assets under the guise of remediation and clean up from the ratepayers.

137. Defendants misled and concealed from the public by refusing to refer to the KIF site as remediation of the largest environmental disaster in U.S. history or as a "hazardous waste" site as suggested by the EPA.

138. Instead of posting warning signs for the public as recommended by EPA, TVA removed any warning signs in Plaintiffs' jurisdiction at the direction of Anda Ray, who said the KIF area water was safe and she would swim in the affected water on CBS's 60 minutes shortly after the 2008 spill.

139. Instead of referring to the site as a decontamination project as recommended by the EPA with appropriate site controls, Jacobs' employees in charge of safety, particularly Sean Healey (certified industrial hygienist) and Tom Bock (site safety manager), failed to provide adequate respiratory protection and air monitoring for the site workers (as proven in *Adkisson*) and, likewise, the public, even though Jacobs knew the particulates from the airborne ash posed dangers to human health and the environment because Jacobs directed the recovery be handled so as to limit any public perception of danger rather than actually keep the public safe.

140. Anda Ray promised that in consideration for people paying rates for safe energy that those affected by Defendants' neglect from spill would be paid for health care cost.

## FIRST CLAIM FOR RELIEF

## DETRIMENTAL RELIANCE AND PROMISSORY ESTOPPEL

141. Defendants' false representations regarding the safety and efficacy of fly ash proximately caused injury to Plaintiffs and their residents. The most recent release of impermissibly dangerous levels of arsenic and radiation into the ground water was yet again part of the pattern and practice of reckless dishonesty and cover up.

142. TVA admitted through the EPA AOC that the fly ash produced by the KIF facility in Kingston, Tennessee constituted an "imminent danger to human health" on or about May 4, 2009.

143. Despite this acknowledgement Defendants have issued hundreds of public statements that fly ash coal combustion residuals ("CCR") were safe — with Defendant Jacobs most recent release occurring in April 2019, at normal levels, and posed no danger to human health.

144. Jacobs and TVA knew that their representations, both public and private, to Plaintiffs were false.

145. Defendants outrageously intended to cause Plaintiffs and others to continue to believe there were no health risks from the fly ash and forego medical evaluation and treatment and save on KIF spill related costs.

146. Plaintiffs and their citizens suffered damage by incurring the expense of providing medical screening, diagnosis, and treatment for their employees and citizens, especially those who were uninsured, thereby damaging Plaintiffs, in an attempt to allay the fear of exposure of citizens living near the KIF spill.

147. TVA repeatedly and fraudulently promised to pay medical expenses for people whose health was affected by the ash, but also led them to believe the ash was safe so they refrained from seeking medical treatment.

148. Instead of keeping their promise to their neighbors, the Plaintiffs herein, the TVA bought two jet planes and Dallas Cowboys owner Jerry Jones helicopter for a grand total of approximately 30 million dollars ($30,000,000.00).

149. TVA made extraordinary purchases while failing to keep the false and empty promises made to its neighbors. TVA enriched itself while broadcasting a supposed covenant to restore the environment as a steward of the community and perpetuating the false perception of moral obligation to protect and keep safe those adversely affected by the billion-gallon toxic ash spill it had caused.

150. Upon information and belief, TVA has recovered over three hundred eighty million dollars ($380,000,000.00) from its insurance carriers, but none of that has been returned to the communities and the people TVA harmed even though as the United State Supreme Court in its landmark decision on April 29, 2019 stated, TVA makes ten billion dollars ($10,000,000,000.00) in revenue annually and such amount recovered, if placed in a fund to provide health benefits, could perpetually assist TVA's victims.

151. Defendants' fraudulent actions and false statements caused the citizens of Roane County to forbear medical examination and to omit relaying exposure information, symptoms, and conditions for medical assistance; and for some, if not all, the damage is irreparable as a result of such delay.

152. This delay in seeking medical attention has created a need for enhanced medical response cost and continued medical monitoring arising from Plaintiffs' citizens reasonably and detrimentally relying upon TVA's promises, and as a direct and proximate result of such interference with the opportunity to seek medical treatment based on their false promises, TVA is liable for the damage caused by the reliance and delay.

153. TVA and Jacobs should be held accountable and ultimately forced by a decision of the trier of fact to pay restitution in the form of disgorgement or otherwise, for the damages created by their failure to honor their promises that caused harm to Plaintiffs and their citizens, who reasonably relied on same, and the related response damages.

154. Jacobs, through a Public Relations Director on site, disseminated all site safety information to TVA.

155. Upon knowledge, information, and belief, Jacobs never discussed the hazards of fly ash in safety meetings in which the TVA public relations department or team members participated.

156. Ms. Anda Ray and a few select TVA employees, who had to approve both Jacobs and TVA press releases, fraudulently withheld accurate exposure, safety, and health information from Plaintiffs.

157. The TVA negligently allowed this to occur with improper supervision over its public relations department.

158. Again, the TVA and Jacobs were required by law to be truthful and accurate to assist in protecting human health.

159. Plaintiffs, in justifiable reliance upon the climate created by TVA's repeated statements that fly ash in the KIF area within a reasonable circumference or radius of the spill was safe, induced the citizens of their communities to forbear getting proper medical treatment, public health care providers to forebear obtaining proper information, and thus increased health care problems and costs because of the delay in properly diagnosing Plaintiffs' citizens.

160. TVA promised that it would pay for everyone's medical expenses affected by the 2008 spill.

161. As a direct and proximate result of Jacobs' fraud upon Plaintiffs, certain individuals have suffered various diseases and conditions, fear of disease, medical expenses, monitoring costs, pain and suffering, mental anguish, other personal injuries, an unfair community reputation and economic stigma, and other damages, with the exact amount to be proven at trial.

162. Defendants spread deceptive messages through key opinion unbranded marketing that was false about fly ash safety.

163. The Defendants wrote favorable false publications, journal articles and delivered support of these false allegations to Plaintiffs and the public.

164. Defendants disseminated many of their false, misleading, imbalanced and unsupported messages through publication because they wanted to manipulate trusting observers to believe fly ash was safe so Defendants could meet deadlines for bonuses and benefit through other means.

165. Through branded and unbranded materials, Defendants presented information and instructions concerning fly ash generally that were false and misleading.

166. In promoting the appropriate handling and testing of the fly ash Defendants knew that their statements were false and misleading, or they recklessly disregarded the truth in marketing them, but continued to publish their misstatements to benefit themselves.

167. Rather than actually test the safety of fly ash appropriately for long-term exposure problems and release prevention, Defendants falsely led the Plaintiffs and the public at large to believe that the testing and reporting of results had been appropriately conducted.

168. Defendants created a body of false, misleading, and unsupported medical and popular impressions about the fly ash that (a) understated the risks, (b) overstated the safety, and (c) was likely to alter public perception of the danger posed. The literature and press releases were, in fact, intended to persuade doctors and the public that the fly ash was safe and thus minimize the perceived risk of disease and damage.

169. The extent of Defendants' disseminated and marketed information that was knowingly false and has now been exposed putting the public in a situation of disbelief such that certain people and businesses do not want to risk living in in the area of the 2008 spill due to Defendants' false representations and exposure and ensuing confusion and uncertainty.

170. Upon information and belief, Defendants spent vast amounts of TVA ratepayers' money to market the deceptive safety of the ash in an attempt to influence the public, healthcare

providers, government agencies and officials, and the Plaintiffs which induced them to refrain from taking legal action or other preventive measures.

171. As described in detail simply below, Defendants:

    a. Misrepresented the truth about how fly ash is harmful to human health.

    b. Misrepresented that the fly ash was being tested appropriately.

    c. This fraud prevented adequate assessment of the health risks from fly ash exposure in an area reasonably close to the spill.

    d. These fraudulent actions induced doctors, patients, and ratepayers from making/knowing decisions by use of misleading terms that fly ash is safe.

    e. Falsely claimed that fly ash (and dust) was adequately managed;

    f. Misrepresented that exposure doses pose no risks to certain residents who lived or worked in an area close to the spill.

    g. Falsely omitted or minimized the adverse effects of fly ash exposure and overstated the safety of fly ash and knowingly did not protect from its harm.

172. All these acts caused the Plaintiffs and their residents to reasonably rely upon the Defendants' ongoing fraud, causing the Plaintiffs' citizens to refrain from properly relaying levels of fly ash exposure to healthcare professionals. This created a greater current need for medical surveillance, health care, and medical response costs that TVA promised to pay the citizens of Harriman, Kingston and Roane County, Tennessee.

## SECOND CLAIM FOR RELIEF

## FRAUDULENT CONCEALMENT

173. Plaintiffs hereby assert their cause of action for fraud against the Defendants for acts and omissions that occurred outside the scope of law, the EPA AOC, and contractual obligations placed upon all who were bound to the TVA/Jacobs contract of which the Plaintiffs and their citizens were direct intended third party beneficiaries, including TVA ratepayers.

174. Upon information and belief, due to various economic motives, certain TVA agents and employees concealed the dangers of the ash and problems associated with the KIF project to their own board of directors. In so doing, they also acted outside the scope of the EPA AOC and outside the scope of the TVA/Jacobs contract without the knowledge of others at TVA. Jacobs was the primary actor in said concealment as referenced in this Complaint.

175. Upon information and belief, these individuals from TVA were motivated by the massive amounts of money and job perks available to them, such as the use of the helicopter purchased from Dallas Cowboys owner Jerry Jones, and the use of recently purchased jets that equated to a combined total of approximately thirty millions of rate payer dollars ($30,000,000.00), as well as an extravagant salary of eight million dollars ($8,000,000.00) of ratepayers' money in annual payment to its CEO Bill Johnson, none of which was paid by insurance proceeds as the TVA has publicly stated in the community.

176.  Jacobs was motivated by a bonus structure that ignored accurate safety protective measures to preserve human health and lied about safety at the site continuously.

177.  Jacobs could only have received bonuses under the TVA / Jacobs contract by fraudulently concealing the risks associated with the KIF spill.

178.  Upon information and belief, one primary materially motivated employee and agent of the TVA was Anda Ray, Senior Vice President over the KIF spill, who had a large salary, generous benefits, and the potential for astronomical bonus dollars.

179.  Upon information and belief, the fraudulent concealment of the toxicity of the ash by Jacobs and certain agents of TVA, including Ms. Ray, induced residents within close proximity of the KIF spill to neglect seeking medical evaluation and treatment, and to forego timely and proper relaying of medical history to their doctors, for economic gain and to minimize individual suits.

180.  This fraudulent concealment which induced the forbearance of people relaying accurate symptoms and also kept them from seeking treatment, amounted to crucial breaches of contractual promises relied upon by those living within a reasonable area from the KIF spill and working on the KIF site. This fraudulent concealment was done to protect bonuses for Jacobs and certain people within TVA to receive massive benefits at the ratepayers expense.

181.  In Jacobs' and TVA's possession were documents that accurately referenced toxic constituents, target organs, and symptoms of the harmful exposure of the fly ash to the members of the community who were exposed to the harmful ash or who lived nearby.

One example of such information is entitled "Fly Ash Constituent Information." This information was not properly disseminated in accordance with law to Roane County officials or the public. Some of the toxic constituents included: radium, cesium, uranium, cesium, boron, vanadium, arsenic, silica, mercury, lead, beryllium, and other constituents.

182. Plaintiffs deserved to know and were promised the truth about the "safety" of fly ash.

183. This information, to protect human health, should have been disseminated to community officials and residents in accordance with TVA's safety directives and the Emergency Planning and Community Right to Know Act. Failure to warn by Defendants is a violation of the legal obligations that interfered with the public's right to know in violation of the EPA AOC, the TVA / Jacobs' contract, OSHA, CERCLA, and RCRA and various other laws that impose these legal duties to the Defendants duty to inform and protect the general public.

184. Furthermore, upon information and belief, the number of toxins, quantity of toxins, routes of exposure, and target organs were recklessly omitted from the SWSHP drafted for the years preceding 2013.

185. TVA and Jacobs should have honored the legal obligation to have truthful, thorough knowledge, and communicate pursuant to the ECPRA, SARA Title III, NCP, 40 C.F.R Part 355 *et. seq.* and NEPA, to the Plaintiffs. TVA and Jacobs failed to do so.

186. Jacobs knowingly and intentionally lied to subcontractors about the safety and the toxicity of the fly ash.

187. Jacobs Safety Manager, Tom Bock, stated you can "eat a pound of fly ash a day for the rest of your life before it will ever hurt you."

188. Jacobs committed fraud by not informing Plaintiffs that the KIF site contained toxic constituents or other hazardous substances including radioactive elements.

189. The information known by Jacobs was concealed falsely, and Jacobs acted with reckless disregard as to whether or not its representations were false, as did certain people within TVA. The TVA failed to prevent any dissemination of false information.

190. Jacobs failed to use due care and honesty regarding the accuracy of its statements to Plaintiffs and deviated from the SWSHP.

191. TVA did the same trying to enhance its credibility by promises made to TVA ratepayers and Roane County residents.

192. Any financial contributions from the TVA to Roane County government may operate as a set-off as to TVA, but not as to Jacobs.

193. Plaintiffs would have sought economic analysis and medical assessments to appropriately address the original ash spill on the KIF site had they known the extent of the zone of airborne contaminants and the wide range of hazardous constituents.

194. Plaintiffs would have sought economic and medical assessments to appropriately deal with the original ash spill on the KIF site had they known of the dangers of prolonged exposure in response to the spill, the Defendants' constant manipulation of environmental and health facts, ongoing leaks, and coverups.

195. As a direct and proximate result of Defendants' on-going fraud upon Plaintiffs, certain members of the community represented through the doctrine of *parens patriae* by Plaintiffs, have illnesses, fear of disease, medical expenses, medical response monitoring costs, pain and suffering, mental anguish, other personal injuries, and other damages with the exact amount to be proven at trial.

196. Defendants accomplished false perceptions through a coordinated, sophisticated, and highly deceptive marketing campaign that began in the late 1990s and which became more aggressive in or about 2006, and continues to the present.

197. Defendants accomplished their marketing campaign goal by convincing doctors, patients, and others that the fly ash had little, if any, risks, and that fly ash was safe.

198. Defendants, individually and collectively, knowing that long-term or intense short term exposure to fly ash causes harm to human health, misrepresented the dangers of such exposures to physicians, pharmacists, and patients by engaging in a campaign to minimize the risks.

199. All of these allegations were a factor that caused the damages herein complained to one of the most beautiful counties in the country.

### THIRD CLAIM FOR RELIEF

### INTENTIONAL AND RECKLESS FAILURE TO WARN

200. Defendants breached their duty by not only failing to warn Plaintiffs, but by fraudulently concealing facts from Plaintiffs, and, upon information and belief, the TVA Board of Directors.

201. Defendants' breach of the duty to warn caused Plaintiffs to believe they were safe inside the environment containing the ash. Plaintiffs were not told to seek protection for their citizens and did not know the fly ash was unsafe, which caused Plaintiffs to be exposed to high concentrations of toxins during the period of their frequent exposure.

202. Defendant TVA now warns that fly ash is hazardous, despite its numerous prior representations to the contrary.

203. As direct and proximate result of Defendants' reckless failure to warn, Plaintiffs have suffered injury both economic and personal injury and other community response damages, with the exact amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### NEGLIGENCE

204. Despite Defendants' mandatory obligations, fly ash constituents and other hazardous substances have remained present in the air, soil, and groundwater, and waterways in Roane County, Tennessee.

205. TVA recklessly selected Jacobs as its prime contractor and site manager and did not communicate appropriately the safety issues involving the public.

206. The TVA recklessly failed to properly vet Jacobs or its personnel before awarding the TVA / Jacobs' contract.

207. TVA recklessly failed to properly require by contract adequate safety precautions and personnel for the citizens of Roane County, Tennessee.

208. The improper negligent handling of the fly ash, caused by Jacobs, resulted in the ash becoming airborne and allowed for windward erosion throughout the KIF site and Roane County, allowing unsafe contact, inhalation, and ingestion by Plaintiffs' citizens.

209. Jacobs recklessly required its subcontractors to wet and suppress fly ash around stationary air monitors and to wash the monitors to lower readings so that the public, including Plaintiffs, would not know how to best respond and protect the people, businesses, and prospective business and residents.

210. These outrageous actions were contrary to Defendants' obligations and scope of law, authority, and any legitimate purpose.

211. Despite Jacobs' alleged or imputed knowledge of fly ash hazards and its duty to prevent the ash from migrating onto as well as into properties in a reasonable area around the KIF spill, the multibillion dollar company did not fulfill its duty of protecting human health.

212. Jacobs knew or should have known the dangerous consequences to those living within a reasonable area of the 2008 KIF spill.

213. Jacobs was unqualified to undertake the job scope as outlined in the TVA / Jacobs' contract with the personnel that they employed for the job.

214. TVA negligently contracted with an inadequate Jacobs and did not competently protect the public.

215. Jacobs deviated from exercising reasonable judgment by engaging in negligent failure to protect human health, property in the local communities, and tax revenues of the communities, which include funding for schools.

216. The damages alleged herein were caused by Jacobs committing impermissible reckless or intentional deviations from the SWSHP, thus damaging the people Jacobs was contractually obligated to protect.

217. Jacobs acted intentionally and recklessly in bad faith by disregarding human health, property, and the local business community; which was the very essence and purpose of TVA contracting with Jacobs as the complete site wide "independent contractor" for management and safety.

218. TVA negligently or recklessly selected Jacobs as its site-wide safety contractor based upon Jacobs' lack of experience in fly ash and CERCLA superfund remediation projects.

219. The Plaintiff communities' health was not protected in an area comprising approximately eight thousand (8,000) citizens living in close proximity to the 2008 KIF spill, some of whom are suffering significant medical problems as a direct and proximate result of Jacobs' deviations from the SWSHP and breaches of the TVA / Jacobs' contract.

220. The medical and economic needs of the Plaintiffs' communities were voluntarily undertaken by TVA and mandated by the EPA AOC.

221. TVA should be required to keep its promise to pay responsive individual medical bills and surveillance for individuals in Plaintiffs' communities, and others who need yearly medical care for current or future medical response to health issues, including but not

limited to response costs of future health care evaluations and treatment due to the fraud committed by the Defendants upon Plaintiffs.

222.  The Defendants' cover-up, as well as the recent leak of arsenic and radiation that occurred at KIF, has created and enhanced further negative economic impact when coupled with Defendants' ongoing dishonesty and concealment of ash safety risks and sporadic leaks at KIF.

223.  Due to their fraudulent, sustained untruthfulness regarding prior environmental cover-ups and the new leaks, a new ongoing nuisance stigma has been further aggravated.

224.  Roane County has lost and continues to suffer loss as potential residents and business ventures choose to locate elsewhere due to the recent release and the environmental uncertainty created by the 2008 KIF spill.

225.  Jacobs was negligent by failing to hire and train employees and independent contractors and subcontractors with proper credentials and experience in applicable policies or procedures for working at the KIF site and for day-to-day safety.

226.  Jacobs was negligent by failing to hire and train employees and independent contractors and subcontractors with proper credentials and experience in public health, operations and management.

227.  Roane County, Kingston and Harriman relied upon Jacobs and TVA as direct third party beneficiaries of the TVA/Jacobs contract.

228. Jacobs was negligent for inadequate performance by failing to implement contracted promises to TVA and its site remediators, including contractors and subcontractors, and Roane County along with the Plaintiff municipalities. All of these allegations were a factor that caused the damages herein complained to one of the most beautiful counties in the country.

229. Jacobs was negligent for inadequate performance of implementing policies and procedures regarding health and safety as promised to TVA for independent contractors and subcontractors working on the KIF site, and Roane County relied upon them as a direct third party beneficiary to the TVA/Jacobs contract.

230. Jacobs was negligent in the construction and implementation of approved safety and health plans for independent contractors working on the KIF site, and Plaintiffs reasonably relied upon those plans as a third party beneficiary to the TVA/Jacobs contract.

231. Jacobs was negligent in the maintenance and the intentional altering and manipulating of toxic air monitoring results provided to TVA to create lower permissible exposure limits ("PEL") readings that directly violated TVA directives and Jacobs' scope of authority, and in violating other statutes and regulations, all of which caused injuries to Plaintiffs, and Plaintiffs reasonably relied upon those results as direct third party beneficiaries to the contract.

232. Defendants knew, or should have known, that the actions were non-discretionary, as maintaining site safety and adherence with directives, statutes and regulations allowed for no discretionary choice.

233. Jacobs had actual notice of the seriousness of the potential problems with the air monitoring and lack of adequate safety and still chose to take little or no action to prevent serious injury to the plaintiffs and others downwind.

234. The Defendants' negligent acts and omissions described above proximately caused and continue to cause damage to Plaintiffs in the form of economic loss, aggravation and inconvenience, lost revenues, medical bills , and other damages - for all of which Defendants are liable in monetary damages.

## FIFTH CLAIM FOR RELIEF

## NEGLIGENCE PER SE

235. Plaintiffs refer to and re-allege the previously referenced violations of state and federal laws as referenced in the entirety of this Complaint. Jacobs and the TVA violated the following standards of conduct that breached its legal obligations:

   a. 33 U.S.C. Ch. 23, § 11151, *et seq.*

   b. *Tenn. Code Ann.* § 50-3-101, *et. seq.*

   c. *Tenn. Code Ann.* § 50-3-2001 *et seq.* as applied through SARA title III

   d. *The Tennessee State Air Pollution Control Regulations*:

   e. *Tenn. St. Reg.* 1200-3-3;

   f. *Tenn. St. Reg.* 1200-3-5;

   g. *Tenn. St. Reg.* 1200-3-8;

h.  *Tenn. St. Reg.* 1200-3-10;

i.  *Tenn. St. Reg.* 1200-3-11;

j.  *Tenn. St. Reg.* 1200-3-12;

k.  *Tenn. St. Reg.* 1200-3-13;

l.  *Tenn. St. Reg.* 1200-3-19;

m.  *Tenn. St. Reg.* 1200-3-22;

n.  *Tenn. St. Reg.* 1200-3-37; and,

o.  *The Roane County Natural Hazard Mitigation Plan.*

## SIXTH CLAIM FOR RELIEF

### TEMPORARY PUBLIC NUISANCE

236.  TVA admitted, through the EPA AOC that the fly ash produced by the TVA facility in Kingston, Tennessee constituted an "imminent danger to human health" on or about May 4, 2009.

237.  Defendants have issued hundreds of public statements that fly ash is safe.

238.  This Court can take judicial notice that TVA and Jacobs concealed the dangers of fly ash from the public and tried to assure the public fly ash controlled, handled, transported, and arranged for disposal by the Defendants is a temporary public nuisance.

239.  On or about August 23, 2012 the District Court for the Eastern District of Tennessee in the matter of *Chesney, et al. v. TVA* entered a Judgment/ Memorandum Opinion stating that TVA was liable for negligence in handling fly ash regarding the issue of liability for property damage based upon theories of nuisance.

240.  Under *Sterling v. Velsicol,* 856 F2d (6th Cir. 1988), chemical hazards such as fly ash constituents are subject to strict liability as they pose an imminent danger to humans and constitute a public nuisance.

241.  A recent jury verdict on November 7, 2018 in the matter of *Adkisson, et al. v. Jacobs,* found that breaches of duty referenced in the EPA AOC and TVA / Jacobs contract can be harmful to human health if the fly ash is inhaled, ingested, or comes in contact with eyes or skin.

242.  TVA has admitted that there are currently impermissible levels of arsenic and radiation in the Roane County groundwater.

243.  As a direct and foreseeable consequence of Defendants' wrongful conduct, Plaintiffs have been required to spend millions of dollars each year to combat the public nuisance enhanced by Defendants' deceptive marketing campaign and reckless remediation of the KIF spill area.

244.  The concealed conglomeration of toxins and carcinogens that continues to flow into the Plaintiffs' groundwater is another means by which the Defendants deceived and damaged, and continue to damage, Plaintiffs.

245. Due to the Defendants' concealing of that conglomeration of toxins and carcinogens the general public's annoyance, fear, aggravation, and inconvenience have been heightened.

246. Under *Tenn. Code Ann.* § 5-1-118 and § 6-2-201, the Plaintiffs further allege that the Defendants' materials, hidden constituents, airborne and waterborne migration, including new leaks into the groundwater of the Plaintiffs' communities are an unreasonable, substantial interference with the public's health, safety and welfare. This constitutes a violation of the Roane Disaster Mitigation Plan.

247. The public is temporarily offended and substantially annoyed by this temporary nuisance that could have been, and can be, remediated.

248. The citizens of Roane County, Harriman, and Kingston are substantially annoyed and the community has been wrongfully stigmatized by the Defendants' actions.

249. Plaintiffs have incurred and continue to incur costs related to fly ash, including, but not limited to, health care costs, criminal justice and victimization costs, social costs, and lost productivity costs.

## SEVENTH CLAIM FOR RELIEF

### OFFENSIVE NON-MUTUAL COLLATERAL ESTOPPEL

250. Under *Bowen v. Arnold,* No. M2015-00762-SC-R11-CV (Tenn. 2016) the Plaintiffs include a request that TVA and Jacobs be bound by the doctrine of offensive non-mutual collateral estoppel to prevent the Defendants from re-litigating previously decided issues as a matter of policy, justice, and judicial economy.

251. The issues, facts, and laws collectively are substantially the same and encompassed in fact and law determinations from the prior proceedings including *Chesney* and *Adkisson*.

252. Defendants misrepresented the dangers of fly ash, precluding Plaintiffs from being joined in the prior litigation. At a minimum Jacobs should be estopped due to its level of reckless disregard for Plaintiffs and others. Jacobs should not benefit from such a heightened level of unclean hands.

253. The actions of these Defendants exhibit the callous disregard for human life, the environment, and the entire area that was — and fortunately still is — one of the most beautiful counties in Tennessee.

254. The previously referenced actions continue despite a 2011 report from the TVA OIG (Office of Inspector General) that reprimanded TVA for their treatment of public safety.

255. On or about February 6, 2009 Jacobs entered into a joint venture / enterprise contractual agreement to manage the CERCLA SUPERFUND toxic KIF cleanup site for TVA.

256. Under Tennessee common law, the strict procedural precedent is that the negligence of one joint venturer impugns all others without fault. *Fain v. O'Connell*, 909 S.W. 2d 790 (Tenn. 1995); *Cole v. Woods*, 548 S.W. 2d 640 (Tenn. 1977).

257. Defendants, jointly and severally, are bound as members of the joint enterprise.

258. Pursuant to *Sterling v. Velisicol*, 855 F. 2d 1188 (6th Cir. 1988), strict liability is established in this action by the subject of the contract, "Ultra Hazardous Activity."

259. Defendants were mandated to protect human life in a disaster that contained fly ash with concealed radioactive materials and over twenty five (25) toxic constituents as designated in the Federal Register as "Toxic" at the KIF remediation site.

260. As a result of hazardous mismanagement at the site on November 7, 2018, a jury returned a verdict of contractually bound Jacobs Engineering Inc., determining that:

- Jacobs breached the TVA / Jacobs' contract that was designed to protect human health, and;

- There were breaches of the SWSHP developed by Jacobs and adopted by TVA to be mandatorily followed, comply with law, and to protect the public; and,

- The breaches by Jacobs were in direct contravention of the mandate to protect the Plaintiffs and their citizens.

261. This mutual, ongoing conduct enhances yet another temporary public nuisance and inquiry upon the communities of Plaintiffs, who's citizens are undeserving of such and without fault.

262. The *Adkisson* jury verdict of November of 2018 held that Jacobs breached its contract with TVA as its Manager of the CERCLA Superfund Site at KIF, breached its obligation to protect human health in accordance with the TVA / Jacobs' contract, and breached its own Site Wide Safety and Health Plan.

263. The jury in *Adkisson*, determined that the fly ash could cause a myriad of injuries including coronary artery disease, lung cancer, leukemia, skin cancer, allergic contact

dermatitis, peripheral neuropathy, asthma, chronic obstructive pulmonary disease, and respiratory conditions, including cough, sore throat, dyspnea on exertion, chest pain or discomfort, bronchitis and emphysema.

264. Jacobs should be estopped from contesting or defending any issues regarding the breaches of the TVA / Jacobs' contract, and this Court should take judicial notice that the conditions resulting from the breaches are at minimum a nuisance and dangerous.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues raised herein including as to claims against the Tennessee Valley authority pursuant to *Thacker v. TVA*.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray judgment against Defendants as follows:

A.     For fair compensatory damages incurred for the ongoing temporary nuisance, lost revenues, all physical injury response cost, disease response costs, fatal illness costs and response, the contractually promised medical response expenses as promised by TVA, any further, medical response costs, emergency response cost, any other further response monies to which Plaintiffs are entitled under the doctrine of *parens patriae*.

B.     Plaintiffs, additionally move for attorneys' fees and all other relief to which they may be entitled in a fair amount determined by a jury, not to exceed an amount

that at is rendered as fair, exclusive of damages deemed as punitive against these Defendants, jointly and severally.

C.     For punitive damages in any amount a Jury or this Court determines to be fair against TVA and Jacobs or *alternatively* treble all other damages to which the Plaintiffs may fairly be entitled.

D.     Further, Plaintiffs pray for all response cost damages in accordance with the EPA AOC, the TVA / Jacobs contract, and law as a whole, and all other damages to which the Plaintiffs are entitled.

E.     On all Claims for Relief, such other and further general relief as this Court deems just and proper under the circumstances.

F.     Further, before the filing of any dispositive motions, Plaintiffs would hereby move for an adequate time for discovery

G.     Plaintiffs reserve the right to amend this Complaint against all parties, as the facts, through discovery, should warrant.

H.     For such other, general relief to which these Plaintiffs may be entitled.

**Respectfully submitted** this ___7___ day of ___May___, 2019.


_____
James K. Scott, BPR # 016893
Keith D. Stewart, BPR # 017574
John Tyler Roper, BPR #021927
625 Market Street, 14th Floor
Knoxville, TN 37902
(865) 437-5081

## COST BOND

We, the municipalities of Roane County, Tennessee, Harriman, Tennessee, and Kingston, Tennessee, as Principals, and James K. Scott, Keith D. Stewart, and J. Tyler Roper, as Sureties, are held and firmly bound unto the Roane County Circuit Court for the payment of all costs awarded against the principal. To that end, we bind ourselves, our heirs, executors and administrators.

The Principal is commencing legal proceeding in the Roane County Circuit Court. If the Principal shall pay all costs which is adjudged against it, then this obligation is void. If the Principal fails to pay, then the Surety shall undertake to pay all costs adjudged against the Principal. Mandated at T.C.A. Section 20-12-120, *et seq*.

**PRINCIPAL**:

**Roane County, Tennessee**

By: _____
    Ron Woody, Chairman

**Harriman, Tennessee**

By: _____

**Kingston, Tennessee**

By: _____

**SURETIES**:

By: _____
    James K. Scott
    Keith D. Stewart
    J. Tyler Roper

## IN THE CIRCUIT COURT FOR ROANE COUNTY, TENNESSEE

Filed
ANN GOLDSTON Time 1:30 pm D.C.
5-23-2019
By Amy Brown

ROANE COUNTY, TENNESSEE, )
HARRIMAN, TENNESSEE, and )
KINGSTON, TENNESSEE, )
                     )
      Plaintiffs, )
                     )
v.                  )     Docket No. 2019-CV-78
                     )
JACOBS ENGINEERING GROUP, INC. )
and )
THE TENNESSEE VALLEY AUTHORITY, )
                     )
      Defendants. )

## MOTION FOR ADMISSION TO APPEAR *PRO HAC VICE*

**COME NOW** the Plaintiffs, by and through the undersigned counsel, and move this Honorable Court to enter the attached Order admitting Marc J. Bern, Esq., of Marc J. Bern & Partners, LLP, to appear *pro hac vice* and represent Plaintiffs in this cause. As grounds, Plaintiffs submit that the applicant for admission *pro hac vice* is a duly-licensed attorney in the State of New York whose credentials are in set forth in the attached affidavit, together with the enclosed Certificate of Good Standing from the State of New York. As further grounds, the Plaintiffs submit that the requisite documents have been completed by the undersigned sponsoring attorney and the applicant for admission *pro hac vice* and have been submitted to the Tennessee Board of Professional Responsiblity, as required by law.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs move this Honorable Court to find their motion to be well-taken and enter the enclosed proposed Order granting

Marc J. Bern, of Marc J. Bern & Partners, LLP, admission to appear *pro hac vice* and

practice before this Court in this matter as counsel for Plaintiffs.

**RESPECTFULLY SUBMITTED** this 20th day of May, 2019,

John Tyler Roper, Esq. (TN BPR# 21927)
James K. Scott, Esq. (TN BPR# 16893)
Keith D. Stewart, Esq. (TN BPR# 17574)
Market Street Law PLLC
625 Market St., 14th Floor
Knoxville, TN 37902
(865) 888-9995 (phone/fax/text)
tyler@marketstreetlawyer.com

Marc J. Bern, Esq. (NY BPR# 1859271)
Marc J. Bern & Partners, LLP
One Grand Central Place
60 E 42nd Street, Suite 950
New York, NY 10165
Tel: (212) 702-5000
Fax: (212) 818-0164
mbern@bernllp.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that true and exact copies of the foregoing Motion for Admission
to Appear *Pro Hac Vice* and the proposed Order have been delivered *via* First Class
U.S. Mail, postage pre-paid, to the address of record for each of the Defendants, such
that receipt of same is reasonably calculated to be effected in accordance herewith,
this the 20th day of May, 2019.

John Tyler Roper, Esq.

# IN THE CIRCUIT COURT FOR ROANE COUNTY, TENNESSEE

|  |  |  |
|---|---|---|
| ROANE COUNTY, TENNESSEE, HARRIMAN, TENNESSEE, and KINGSTON, TENNESSEE, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Docket No. 2019-CV-78 |
| JACOBS ENGINEERING GROUP, INC. and THE TENNESSEE VALLEY AUTHORITY, | ) ) ) | |
| Defendants. | ) ) | |

## ORDER

This cause came on to be heard this ____ day of _____, 2019, upon Plaintiffs' Motion for Admission to Appear *Pro Hac Vice*, filed by Plaintiffs' local counsel, John Tyler Roper, Esq., of Market Street Law, PLLC, for an order admitting Marc J. Bern, Esq., of Marc J. Bern & Partners, LLP, to appear as counsel of record and represent Plaintiffs in this cause. Based on the Plaintiffs motion, the record as a whole, and the Court being otherwise sufficiently advised that the requested relief is appropriate, the Court finds Plaintiffs' motion is well-taken and, therefore, it is

ORDERED, ADJUDGED and DECREED that Marc J. Bern, Esq., of Marc J. Bern, LLP, is hereby admitted *pro hac vice* to this Court to appear and represent Plaintiffs in this cause only.

ENTER this _____ day of _____, 2019.

_____
JUDGE

APPROVED FOR ENTRY BY:

John Tyler Roper, Esq. (TN BPR# 21927)
James K. Scott, Esq. (TN BPR# 16893)
Keith D. Stewart, Esq. (TN BPR# 17574)
Market Street Law PLLC
625 Market St., 14th Floor
Knoxville, TN 37902
(865) 888-9995 (phone/fax/text)
tyler@marketstreetlawyer.com

Marc J. Bern, Esq. (NY BPR# 1859271)
Marc J. Bern & Partners, LLP
One Grand Central Place
60 E 42nd Street, Suite 950
New York, NY 10165
Tel: (212) 702-5000
Fax: (212) 818-0164
mbern@bernllp.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing Order has been delivered *via* First Class U.S. Mail, postage pre-paid, to the address of record for each of the Defendants, so that receipt of the same is reasonably calculated to be effected in accordance therewith, this the _____ day of _____, 2019.

John Tyler Roper, Esq.

AFFIDAVIT OF ___Marc J. Bern_____
                     *(Pro Hac Vice Applicant)*

STATE OF ___Tennessee___

COUNTY OF __Roane___

Before me, the undersigned, personally appeared ___Marc J. Bern_____,
                                                 *(Pro Hac Vice Applicant)*
who after being duly sworn makes oath and states as follows:

(1)   My full name is: ___Marc J. Bern_____

      My residence address is:_██████████████████ Aspen, CO 81611____

      My firm name is:___Marc J. Bern & Partners LLP_____

      My office address is:___One Grand Central Place, 60 E. 42nd St. Suite 950, New York, NY 10165

      My email address is: ___Mbern@bernllp.com_____

      My telephone number is: ___212-702-5000_____

      Other jurisdictions licensed & registration/identifying numbers are:

            New York 1859271

            Wisconsin 1016558

      Full name or style of case in which I seek to appear:

            Roane County, Tennessee, et al v. Jacobs Engineering Group Inc., et al.


      Name of the client or clients I seek to represent:

            All Plaintiffs

(2)   The jurisdiction(s) in which licensed to practice law, with date(s) of admission:
      New York, 5/10/1983


                                    –1–

Any other courts in which admitted to practice, with date(s) of admission:

Wisconsin 8/27/1975

Statement of good standing in all other jurisdictions in which applicant is licensed to practice law: The Applicant is in good standing in all jurisdictions in which applicant

is licensed to practice law.

(3)  Full name or style of each case in which applicant was previously admitted or sought to be admitted *pro hac vice* in any trial or appellate court of Tennessee within the preceding three years, date of any such admission or the date of any such motion that was filed but not granted, and the status of any such case in which not admitted:

None

(4)  Statement concerning whether the applicant lawyer has previously been denied admission *pro hac vice* or has had an admission *pro hac vice* revoked by any court in any jurisdiction and, if so, a full description of the circumstances, including the full name or style of the case:

Applicant has never been denied admission nor has applicant's approved pro hac vice ever

been revoked.

(5)  Statement concerning whether the applicant lawyer has ever been disciplined or sanctioned by the Board of Professional Responsibility of the Supreme Court of Tennessee, by any similar lawyer disciplinary agency in any jurisdiction, or by any similar lawyer disciplinary authority and, if so, a full description of the circumstances, including the full name or style of the matter:

Applicant has never been disciplined or sanctioned by the Board of Professional

Responsibility of the Supreme Court of Tennessee or by any similar

agency in any jurisdiction.

–2–

(6) Statement concerning whether any disciplinary action or investigation concerning the applicant lawyer's conduct is pending before the Board of Professional Responsibility of the Supreme Court of Tennessee, before any similar lawyer disciplinary agency in any jurisdiction, or before any similar lawyer disciplinary authority and, if so, a full description of the circumstances, including the full name or style of the matter:

Applicant's conduct is not pending before the Board of Professional Responsibility of the

Supreme Court of Tennessee or any disciplinary agency in any jurisdiction.

(7) Statement that the applicant lawyer is familiar with the Tennessee Rules of Professional Conduct and the rules governing the proceedings of the court before which the lawyer seeks to practice:

Applicant is familiar with the Tennessee Rules of Professional Conduct and the Rules of the

Courts of Tennessee.

(8) Statement that the applicant lawyer consents to the disciplinary jurisdiction of the Board of Professional Responsibility of the Supreme Court of Tennessee and the courts of Tennessee in any matter arising out of the lawyer's conduct in the proceeding and that the lawyer agrees to be bound by the Tennessee Rules of Professional Conduct and any other rules of conduct applicable to lawyers generally admitted in Tennessee:

Applicant consents to the disciplinary jurisdiction of the Board of Professional Responsibility

of the Supreme Court of Tennessee and the Courts of Tennessee and agrees to be bound by the Tennessee

Rules of Conduct.

(9) Tennessee lawyer with whom the applicant lawyer is associated:

Name: John Tyler Roper, Esquire

Address: 625 Market St., 14th Floor, Knoxville, TN 37902

Telephone No.: (865)262-8516          TN BPR No.: 021927

(10) Statement that the applicant lawyer has paid all fees required by this Rule in connection with the motion for admission:

The applicant has paid all fees required by this rule.

–3–

(11)   At the option of the applicant lawyer, any other information supporting the lawyer's admission:

> None.

(12)   Statement indicating service of the *pro hac vice* motion and all associated papers upon all counsel of record in the proceeding and upon the Board of Professional Responsibility of the Supreme Court of Tennessee:

> Service of the pro hac vice motion and all associated papers will be made upon counsel of record
>
> and upon the Board of Professional Responsibility of the Supreme Court of Tennessee.

(13)   A certificate of good standing from the court of last resort of the licensing jurisdiction in which the applicant principally practices, or resides, is <u>attached as an Exhibit</u> to this affidavit and incorporated herein.

I declare under penalty of perjury that the foregoing is true and correct.

_Marc J. Bern_

Sworn to and subscribed before me this _/7_ day of _May_, 20 _18_.

_Notary Public_

My commission expires: _6/2/22_

ANDREW E. GRAYBEAL
STATE OF
TENNESSEE
NOTARY PUBLIC
KNOX COUNTY

—4—



# State of New York
## Supreme Court, Appellate Division
### Third Judicial Department

I, Robert D. Mayberger, Clerk of the Appellate Division of the Supreme Court of the State of New York, Third Judicial Department, do hereby certify that

## Marc Jay Bern

having taken and subscribed the Constitutional Oath of Office as prescribed by law, was duly licensed and admitted to practice by this Court as an Attorney and Counselor at Law in all courts of the State of New York on the **10th day of May**, 1983, is currently in good standing and is registered with the Administrative Office of the Courts as required by section four hundred sixty-eight-a of the Judiciary Law.

In Witness Whereof, I have hereunto set my hand and affixed the Seal of said Court, at the City of Albany, this **6th day of May**, 2019.



Robert D Mayberger

Clerk