UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| ROANE COUNTY, TENNESSEE, | ) |
| THE CITY OF KINGSTON, | ) |
| TENNESSEE, and THE CITY OF | ) |
| HARRIMAN, TENNESSEE, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No.: 3:19-cv-206-TAV-HBG |
| | ) |
| JACOBS ENGINEERING GROUP, INC., and | ) |
| THE TENNESSEE VALLEY AUTHORITY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Roane County and the cities of Harriman and Kingston filed this action, which seeks damages in excess of sixty-three million dollars ($63,000,000) for injuries sustained by those residing within plaintiffs' jurisdictions. However, this procedure—*parens patriae* standing, as it is called—is available only to sovereign states, not cities and counties. Plaintiffs have attempted to cure this fatal deficiency by seeking leave to amend their complaint to assert a class action under Rule 23 of the Federal Rules of Civil Procedure. But a mere rule of procedure cannot grant standing where none exists under the Constitution. Because plaintiffs do not have Article III standing to assert the rights of their citizens, leave to file this amended complaint will be **DENIED**.

As an initial matter, plaintiffs' original complaint plainly fails to establish standing as a matter of law. In that complaint, which was initially filed in state court prior to removal, plaintiffs explicitly invoke *parens patriae* standing to "protect their citizens' individual and collective interests" [Doc. 1-1, PageID #: 11]. But that doctrine only permits states, not cities

or municipalities, to assert the rights of their citizens. Precedent confirming that conclusion—even the ones cited by plaintiffs as ostensibly supporting their position—are nearly innumerable.[1] Plaintiffs therefore cannot establish *parens patriae* standing.

---

[1] *Wheeler v. Smith*, 50 U.S. 55, 78 (1850) ("The State, as a sovereign, is the *parens patriae*."); *Connecticut v. Health Net, Inc.*, 383 F.3d 1258, 1261 (11th Cir. 2004 ("*Parens patriae* is a common law doctrine that permits states to sue under certain limited circumstances to enforce what the Supreme Court has called 'quasi sovereign' interests."); *Estados Unidos Mexicanos v. DeCoster*, 229 F.3d 332, 335 (1st Cir. 2000) ("The doctrine has developed as to States of the United States. It . . . [recognizes] the special role that a State plays in pursuing its quasi-sovereign interests in 'the well-being of its populace.'" (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 600 (1982))); *United States v. City of Pittsburg, Cal.*, 661 F.2d 783, 787 (9th Cir. 1981) ("Although cities may 'sue to vindicate such of their own proprietary interests as might be congruent with the interests of their inhabitants,' only the states and the federal government may sue as parens patriae."); *City of Safety Harbor v. Birchfield*, 529 F.2d 1251, 1256 n.7 (5th Cir. 1976) (holding that the city-litigant did "not enjoy the quasi-sovereign status of a state."); *Aziz v. Trump*, 231 F. Supp. 3d 23, 30 (E.D. Va. 2017) ("American courts have long recognized that states, as *parens patriae*, have a particular 'set of interest . . . in the well-being of [their] populace.'" (quoting *Snapp*, 458 U.S. at 600)); *Texas v. United States*, 86 F. Supp. 3d 591, 625 (S.D. Tex. 2015) ("*Parens patriae* permits a state to bring suit to protect the interests of its citizens . . . ."), *aff'd*, 809 F.3d 134 (5th Cir. 2015); *Arias v. Dyncorp*, 738 F. Supp. 2d 46, 53 (D.D.C. 2010) ("Parens patriae is a doctrine that is reserved for U.S. States."), *aff'd*, 752 F.3d 1011 (D.C. Cir. 2014); *Warren Cnty. v. North Carolina*, 528 F. Supp. 276, 283 (E.D.N.C. 1981) ("While states have been accorded standing in federal courts under the doctrine of parens patriae, this doctrine has not been extended to counties." (citations omitted)); *Prince George's Cnty. v. Levi*, 79 F.R.D. 1, 4 (D. Md. 1977) ("[B]oth the federal government and the states may in appropriate circumstances sue to vindicate the interests of their citizens. However, this right, enjoyed by the state of Maryland, to sue on behalf of its citizens does not give plaintiff standing to represent its residents. The power of a political subdivision of a state is 'derivative and not sovereign,' and it may only sue to vindicate its own interests." (citations omitted)); *Jackson v. Cleveland Clinic Found.*, No. 1:11-CV-1334, 2011 WL 4007732, at *6 (N.D. Ohio Sept. 9, 2011) ("Courts have consistently held that municipalities are not vested with power to protect [their] residents' interests under the theory of *parens patriae*." (quoting *Karst Envt'l Educ. & Prot., Inc. v. Fed. Highway Admin.*, No. 1:10-CV-154-R, 2011 WL 1434608, at *6 (W.D. Ky. Apr. 14, 2011)) (citing *City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 892 (2000); *In re Multidistrict Vehicle Air Pollution M.D.L. No. 31*, 481 F.2d 122, 131 (9th Cir. 1973); *Town of Brookline v. Operation Rescue*, 762 F. Supp. 1521, 1524 (D. Mass. 1991))); *Brazoria Cnty. v. Hartford Cas. Ins. Co.*, No. Civ.A.G-04-691, 2005 WL 1364837, at *3 (S.D. Tex. June 7, 2005) ("States do have the power to sue at least in some circumstances as parens patriae, [but] [c]ounties and other political subdivisions do not have this right." (citations omitted)).

Even if plaintiffs were somehow permitted to proceed through sovereignty derivative from the state of Tennessee, only claims relating to a state's "'quasi-sovereign' interest[s]" are cognizable as *parens patriae*. *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601 (1982). This category excludes the "[i]nterests of private parties," which "do not become [sovereign] simply by virtue of the State's aiding in their achievement." *Id.* at 602. In other words, a state cannot "attempt to pursue the interests of a private party . . . only for the sake of the real party in interest." *Id.* Under this standard, the original complaint, which seeks recovery for personal and economic injuries incurred by citizens residing within plaintiffs' jurisdictions, does not assert a "quasi-sovereign" interest.

It is unsurprising, then, that plaintiffs have abandoned the doctrine of *parens patriae* in their proposed amended complaint, where they seek certification to represent their citizens in a class action under Rule 23 of the Federal Rules of Civil Procedure. But, of course, "[t]hreshold individual standing is a prerequisite for all actions, including class actions." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). This means that a plaintiff, even if a representative of putative class, must establish "a 'case or controversy' between himself and the defendant within the meaning of Article III." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Of course, a municipality has standing to seek relief for its own "direct[] injur[i]es." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 110 (1979). As the D.C. Circuit put it, a city has standing "if it alleges harm to itself as city *qua* city." *City of Olmsted Falls v. F.A.A.*, 292 F.3d 261, 268 (D.C. Cir. 2002). Parts of plaintiffs' amended complaint appear to fit that bill, for example:

3

> [T]he governmental entities sue directly to recover lost tax revenues both past and future, for infrastructure, local schools, business, recreation, development, public medical and ongoing emergency response costs, environmental testing, and all other services naturally incurred by the Plaintiffs to their citizenry as set forth herein.

[Doc. 32-1, PageID #: 1718]. Plaintiffs are therefore entitled to an on-the-merits adjudication of these types of claims.

It is a different story for the class-action allegations. Plaintiffs cannot proceed in this capacity because plaintiffs, each of whom is a governmental entity, are not members of the putative class, which is composed of their citizens.[2] Because plaintiffs therefore lack standing with respect to the class-action allegations, leave to amend this complaint will be denied.

For Article III standing, it is not enough that a plaintiff incurs *some* injury; he or she must incur *the right kind* of injury. As Justice Scalia explained in *Lewis v. Casey*, "standing is not dispensed in gross." 518 U.S. 343, 358 n.6 (1996). The Supreme Court has explained elsewhere that "a plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) (citation omitted). This is in contrast to standard class-action procedure, under which, as the Second Circuit has explained, "the fact that the parties 'possess the same interest' and 'suffer[ed] the same injury' gives the named plaintiff a sufficient stake in the outcome of her

---

[2] "Because the [issue of standing] goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007). Accordingly, although neither defendant has raised this argument in these terms in the pleadings, the Court recognizes its duty to examine its jurisdiction *sua sponte* and addresses this issue pursuant to that duty.

putative class members' cases." *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 94 (2d Cir. 2018) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011)).

Applying these principles here is fairly straightforward. The interests and injuries of plaintiffs differ significantly from those of their citizens. The amended complaint alleges that plaintiffs' citizens have suffered personal and certain economic injuries, namely harms to human health and personal medical expenses, which plaintiffs, as cities and a county, do not and cannot share. Likewise, plaintiffs' alleged injuries, namely lost tax revenues, are unique to plaintiffs as governmental entities and thus cannot be shared by their citizens. Thus, while plaintiffs' alleged injuries certainly arise out of the same or similar circumstances as its citizens' injuries, that similarity does not equip plaintiffs with the necessary stake in litigating injuries of its citizens that they do not share. Accordingly, plaintiffs lack standing to assert such claims.

The Court acknowledges Sixth Circuit authority that arguably counsels in favor of treating this deficiency of the amended complaint as a matter of class certification, rather than standing. *Fallick v. Nationwide Mut. Ins. Co*., 162 F.3d 410, 423 (6th Cir. 1998). According to the Sixth Circuit, "Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23." That is true, so far as it goes, but *Fallick* says nothing about the situation here, where interests and injuries suffered by the to-be representatives and the putative class members differ starkly. And there is no reason it would have addressed this issue: it was an ERISA case, brought by an individual against Nationwide, on behalf of himself and other class members, who were participants and

5

beneficiaries under different plans administered by Nationwide. In other words, *Fallick* dealt with similar claims against the same defendant, which implicated the same provisions of ERISA. The class representative there clearly had standing; here they do not.

In any event, it is nearly certain that this class would not be certified under Rule 23 of the Federal Rules of Civil Procedure, which establishes, among other implicit requirements, four prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). In particular, because "[b]oth commonality and typicality measure the degree of interrelatedness between the claims in a class action," the dissimilarity of injuries suffered by plaintiffs and their citizens, which the Court has discussed *supra*, would likely preclude a finding of commonality and typicality. 1 Newberg on Class Actions § 3:31 (5th ed.). Another likely roadblock to certification of plaintiffs' class is also that plaintiffs are not members of the purported class. Courts interpret membership in a class as either an implicit, freestanding requirement to be applied prior to the Rule 23 analysis, *see id.* § 3:10 (citing, among other cases, *O'Neil v. Appel*, 165 F.R.D. 479, 493 (W.D. Mich. 1996) ("The bedrock requirement of adequacy is that the named representative be a member of the class.")), or a requirement subsumed by the express requirements in Rule 23. *See id.* § 3:9 (citing *Rodriguez by Rodriguez v. Berrybrook Farms, Inc.*, 672 F. Supp. 1009, 1012 (W.D. Mich. 1987)). Applying either approach here, plaintiffs could not satisfy the requirements of certification because, as discussed, plaintiffs are not members of the class they seek to represent. This, too, is reason enough to deny plaintiffs' leave to file the proposed amended complaint.

6

Plaintiffs lack Article III standing to pursue claims based on injuries to their citizens. This motion to amend the complaint [Doc. 32] is therefore **DENIED**. Plaintiffs are **DIRECTED** to amend their complaint to conform with findings set forth herein within fourteen (14) days of the date of this order. In light of this ruling, defendants' pending motions to dismiss [Docs. 18, 20] are hereby **DENIED** with leave to refile if and when plaintiffs file an amended complaint, to the extent those arguments are still relevant. Plaintiffs' motion to strike [Doc. 33] and plaintiffs' motion to amend [Doc. 48] are **DENIED** as moot.

The Court also notes that on November 22, 2019, plaintiffs improperly filed an amended complaint [Doc. 42], to which defendants object [Docs. 44, 45]. Defendants' objections are well taken because the amended complaint was not filed in accordance with Rule 15(a)(2) of the Federal Rules of Civil Procedure. The Clerk is **DIRECTED** to strike plaintiffs' amended complaint [Doc. 42] from the docket.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE