UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| ROANE COUNTY, TENNESSEE, )<br>THE CITY OF KINGSTON, )<br>TENNESSEE, and )<br>THE CITY OF HARRIMAN, TENNESSEE, )<br> )<br>Plaintiffs, )<br> )<br>v. )<br> )<br>JACOBS ENGINEERING GROUP, INC., and )<br>THE TENNESSEE VALLEY AUTHORITY, )<br> )<br>Defendants. ) | No.: 3:19-cv-206-TAV-HBG |

## MEMORANDUM OPINION

Plaintiffs Roane County, Tennessee, and the cities of Harriman, Tennessee, and Kingston, Tennessee, (collectively, "Plaintiffs") filed this action seeking damages related to a 2008 ash waste containment structure failure that released toxic waste onto Plaintiffs' properties. Now before the Court are Plaintiffs' motions to preserve evidence, [Doc. 47], for an extension of time to file a reply [Doc. 55], and to amend their complaint [Doc. 59]; and Defendants' motions to dismiss [Docs. 62, 64. For the reasons set forth below, Defendants' motions to dismiss [Docs. 62, 64] will be **GRANTED**, and all other motions [Docs. 47, 55, 59] will be **DENIED AS MOOT**.

I. ALLEGATIONS

On December 22, 2008, an ash waste containment structure owned and operated by Defendant Tennessee Valley Authority ("TVA") at its plant near Kingston, Tennessee, failed and released more than one billion gallons of sludge and water into the nearby

environment [Doc. 59-1 ¶ 39].[1]  The release of toxic ash sludge from the containment structure created a "tidal wave" of water, toxic ash sludge, and fly ash that destroyed several homes, covered local roads and a railroad spur, contaminated drinking wells and municipal water intakes, damaged water lines, killed fish and other flora and fauna, and ruptured a major gas line in a neighborhood adjacent to the plant [*Id.*, ¶¶ 1, 40].  Defendant Jacobs Engineering Group, Inc. ("Jacobs") was the primary contractor in charge of cleanup [*Id.*, ¶ 79].  Plaintiffs have also discovered that the plant continues to leak arsenic, asbestos, and radiation into their groundwater [*Id.*, ¶¶ 1, 25, 64, 74, 133, 137, 155, 176, 178, 239, 265, 271, 294, 336, 351, 369].

Plaintiffs assert seven causes of action against Defendants, seeking to recover damages stemming from Defendants' roles in the containment and cleanup failures: (1) promissory estoppel; (2) fraudulent concealment; (3) intentional or reckless failure to warn; (4) negligence; (5) negligence per se; (6) temporary public nuisance; and (7) offensive non-mutual collateral estoppel [*Id.*, pp. 40-76].  Defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss all claims on various grounds [Docs. 63, 65].

## II. STANDARD OF REVIEW

Rule 8(a) of the Federal Rules of Civil Procedure sets out a liberal notice pleading standard.  *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002).  Thus, a complaint filed in federal court need only contain "'a short and plain statement of the claim showing that

---

[1] Defendants' motions to dismiss are premised on the substance of Plaintiffs' Proposed Amended Complaint, which is why that document is referred to here for its substance [Docs. 63, 65].

2

the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id*. (internal quotation marks and alterations omitted). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice," and "a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (emphasis added).

In deciding a Rule 12(b)(6) motion, a court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *accord Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires [the Court] to draw on its judicial experience and common sense." *Id*. at 679. In conducting this inquiry, the Court "must construe the complaint in a light most favorable to plaintiffs, accept all

well-pled factual allegations as true, and determine whether plaintiffs undoubtedly can prove no set of facts in support of those allegations that would entitle them to relief." *Bishop*, 520 F.3d at 519.

## III. ANALYSIS

### A. Standing

Defendants' first argument for the dismissal of this case is that Plaintiffs do not possess the requisite constitutional standing to maintain this action [Doc. 63 pp. 14-18]. Defendants argument here relates to a previous order from this Court on this issue. In their previous complaint, Plaintiffs attempted to assert this action on behalf of their citizens [Doc. 49 p. 3]. This Court, however, explained that, to maintain constitutional standing, Plaintiffs must assert claims for injuries directly affecting them, not "claims based on injuries to their citizens" [Doc. 49 p. 2-7]. Plaintiffs have since focused their Amended Complaint on the injuries directly affecting them. Specifically, Plaintiffs assert that the 2008 toxic spill on Plaintiffs' properties and Defendants' subsequent actions during the cleanup and response process have caused Plaintiffs' properties to have been "negatively stigmatized" and devalued and has led to lost tax revenue and environmental response, healthcare, and emergency response costs [Doc. 59-1 ¶¶ 1, 61-65, 69, 99, 130, 166-169, 172, 177-79, 222, 230, 289, 306, 348, p. 75]. The Court concludes that, based on the allegations in the proposed amended complaint, Plaintiffs have articulated sufficient factual matter to establish constitutional standing.

4

## B. Individual Causes of Action

Defendants argue for the dismissal of all of Plaintiffs' claims. The parties agree that Tennessee state law governs the substance of Plaintiffs' claims [Doc. 63 p. 21; Doc. 65 p. 17; Doc. 80 p. 16; Doc. 81 pp. 9-10].

### 1. Promissory Estoppel

Plaintiffs' first claim for relief is for promissory estoppel [Doc. 59-1 ¶¶ 211-40].[2] A sister court outlined the doctrine of promissory estoppel under Tennessee law:

> A claim for promissory estoppel in Tennessee, also known as "detrimental reliance," has three elements: "(1) a party made a promise which the promisor should reasonably have expected to induce the action or forbearance of the promise; (2) the promise does induce that action or forbearance; and (3) injustice can be avoided only by enforcing the promise." The key element is, of course, the promise. Tennessee does not liberally apply the doctrine of promissory estoppel and limits its application to exceptional cases "verging on actual fraud."

*Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 901 (M.D. Tenn. 2018) (internal citations omitted). The promise must be "unambiguous and not unenforceably vague . . . ." *Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007) (citations omitted). Because a claim of promissory estoppel under Tennessee law requires a showing that the defendant's actions are "akin to fraud," the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which relates to pleading fraud, applies. *See LeBlanc v. Bank of America, N.A.*, No. 2:13-cv-02001-JPM-tmp, 2013 WL 3146829, at *16 (W.D. Tenn. June 18, 2013) (dismissing a promissory estoppel claim under Tennessee law on the ground

---

[2] To reiterate, Defendants have treated the proposed Amended Complaint as the operative complaint in this case, so the Court will do the same.

5

that plaintiff had not asserted when the alleged promise was made or who specifically made the alleged promise).

As pleaded, Plaintiffs' promissory estoppel claim suffers from numerous deficiencies. Plaintiffs have identified several general promises with no specific details regarding those promises [Doc. 59-1 ¶¶ 211-40]. Specifically, the only "promises" Plaintiffs have alleged Defendants made are: (1) TVA's truthful disclosure of information; (2) that "fly ash" (a byproduct of the burning of coal) is safe, was being tested appropriately, was adequately managed, and was being appropriately remediated upon its spill; and (3) that TVA would pay the medical expenses of those people affected by the spill [Doc. 59-1 ¶¶ 48, 163-64, 166, 212, 222, 224, 232].

Beginning with the last purported promise, Plaintiffs do not identify the "time [and] place" of this statement. *See Conopco*, 2017 WL 52606, at *6 (internal quotation marks omitted) (quoting *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 (6th Cir. 2005)); *see also LeBlanc v. Bank of Am., N.A.*, No. 2:13-CV-02001-JPM-TMP, 2013 WL 3146829, at *16 (W.D. Tenn. June 18, 2013) ("In his Complaint, [Plaintiff] does not assert when the alleged promise was made . . . as required by Rule 9(b) . . . . Accordingly, [Plaintiff's state law] promissory-estoppel claim is DISMISSED . . . ." (internal citations omitted)). Plaintiffs also do not identify to whom this purported promise was made, i.e., whether the representation was made to Plaintiffs or its citizens. Finally, Plaintiffs do not articulate what actions they undertook or did not undertake specifically because of TVA's

6

representation that it would pay for Plaintiffs' citizens medical expenses stemming from the spill.

As for the remaining alleged promises by Defendants, Plaintiffs' assertions suffer from similar defects. Defendants' purported promises—to plaintiffs—of "truthful disclosure of information[,]" "safe" fly ash, "appropriate" fly ash testing, "adequately managed" fly ash, and whatever unspecified representations about the remediation process are ambiguous and unenforceably vague [Doc. 59-1 ¶¶ 211-40]. These purported representations by Defendants are akin to the representations at issue in *Chavez* that the Tennessee Court of Appeals there found to be ambiguous, vague, and nonspecific: "[T]hat the Oak Ridge construction market was *strong and solid*, that there was *years of work to be done*, that overtime would be *plentiful*, and that anyone with a security clearance *would have no difficulty finding work in Oak Ridge*." *Chavez*, 235 S.W.3d at 405 (emphasis added) (internal quotation marks omitted); *see also Amacher v. Brown-Forman Corp.*, 826 S.W.2d 480, 482 (Tenn. Ct. App. 1991) (promise that plaintiff "w[as] to have a continuing supply of thick stillage" was unenforceably vague); *compare to BiotronX, LLC v. Tech One Biomedical, LLC*, No. 3:19-CV-01035, 2020 WL 3047637, at *6 (M.D. Tenn. June 8, 2020) (defendant's promise to purchase plaintiff's inventory if plaintiff would immediately begin to disassemble inventory and dismantle certain intact instruments held to be enforceable). Simply put, "a representation differs from a promise." *Builders Insulation of Tenn., LLC v. S. Energy Sols.*, No. 2:17-CV-02668-TLP-TMP, 2018 WL 5539805, at *3 (W.D. Tenn. Oct. 29, 2018) (citations omitted).

7

Plaintiffs have failed to plausibly allege a promissory estoppel claim against Defendants, so Plaintiffs' First Claim for Relief in their Amended Complaint will be dismissed.

### 2. Fraudulent Concealment

Plaintiffs' second claim for relief is for fraudulent concealment [Doc. 59-1 ¶¶ 241-65]. Under Tennessee law:

> The tort of "fraudulent concealment" is another claim that falls under the umbrella of "fraud." This tort, also known as 'constructive fraud,' is committed when "a party who has a duty to disclose a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury."

*Roopchan v. ADT Sec. Sys., Inc.*, 781 F. Supp. 2d 636, 652 (E.D. Tenn. 2011) (citations omitted). The two facts that Plaintiffs allege Defendant concealed from them are: (1) the general harmfulness of fly ash and the threat that it posed to the surrounding communities; and (2) the fact that radiation and arsenic have recently begun leaking into Plaintiffs' groundwater [Doc. 59-1 ¶¶ 241-65].

Regarding the first alleged fraudulently concealed fact, Plaintiffs themselves have acknowledged that "TVA admitted through the EPA Administrative Order that fly ash produced by the TVA facility in Kingston, Tennessee constituted an 'imminent danger to human health' on or about May 11, 2009" [*Id.*, ¶ 353]. Plaintiffs have also termed the 2008 spill the "largest environmental disaster in United States history" and admit that "publicity" surrounded it [*Id.*, ¶ 65]. Importantly, "a party does not have a duty to disclose a material fact where ordinary diligence would have revealed the undisclosed fact." *Odom v. Oliver*,

8

310 S.W.3d 344, 350 (Tenn. Ct. App. 2009) (citations omitted). Here, Plaintiffs, as governmental bodies, cannot reasonably contend that ordinary diligence and inquiry into "the largest environmental disaster in United States history" would not have revealed the dangerous effects of fly ash, one of the toxic chemicals released by the spill, and the threat it posed to Plaintiffs' communities, particularly in light of a six-year federal public investigation into, and cleanup of, the 2008 spill which was conducted between 2009 and 2015.

Seemingly acknowledging the deficiency of such an argument, Plaintiffs focus their allegations on their lack of knowledge as to the *extent* of the negative effects of fly ash and how this further knowledge would have caused Plaintiffs to seek "economic and medical assessments to appropriately deal with the original ash spill . . . ." [Doc. 59-1 ¶¶ 259-60]. However, "the statute of limitations on a tort action commences when plaintiff knew or in the exercise of reasonable diligence, should have known, that an actionable injury has occurred. . . . Knowledge that an actionable injury has occurred does not require absolute knowledge of the particulars of the injury." *Wyatt v. A-Best, Co., Inc.*, 910 S.W.2d 851, 857-58 (Tenn. 1995). "There is no dispute that [a] three-year statute of limitations . . . applies to plaintiffs' constructive fraud claim. The statute begins to run 'when a plaintiff discovers, or in the exercise of reasonable care and diligence, should have discovered his injury and the cause thereof.'" *Hira v. N.Y. Life Ins. Co.*, 144 F. Supp. 3d 977, 980 (E.D. Tenn. 2015) (internal citations omitted). Through the exercise of reasonable diligence, Plaintiffs would have understood as early as mid-2009 that fly ash was

dangerous to their constituents' health and that such danger would cause Plaintiffs to expend resources to assist in their citizens' economic and medical recovery from the 2008 toxic spill. *Cf. Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) (dismissal on a motion under Rule 12(b)(6) is warranted if defendant meets its burden of showing that the allegations in the complaint affirmatively show that the claim is time-barred). For this reason, Plaintiffs' fraudulent concealment claim is barred by the statute of limitations.

Moreover, to the extent that Plaintiffs' fraudulent concealment claim is predicated on the recent leaks of radiation and arsenic into their groundwater, Plaintiffs herein have not pleaded sufficient allegations establishing a duty on Defendants' part to reveal these leaks for purposes of such claim. The Sixth Circuit in *Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522 (6th Cir. 2007), outlined the duty element of a fraudulent concealment claim under Tennessee law:

> The Tennessee Supreme Court has explained there can be no tort of fraudulent concealment absent a duty to disclose . . . . Under Tennessee law, the duty to disclose arises in only three scenarios:
>
> 1. Where there is a previous definite fiduciary relation between the parties.
>
> 2. Where it appears one or each of the parties to [a] contract expressly reposes a trust and confidence in the other.
>
> 3. Where [a] contract or transaction is intrinsically fiduciary and calls for perfect good faith. The contract of insurance is an example of this class.

10

*Id*. at 527-28 (internal citations omitted).  Plaintiffs' only attempts to establish a duty on the part of Defendants to specifically disclose the leaking arsenic and radiation is to allege that: (1) Plaintiffs were "direct intended third party beneficiaries" to the cleanup contract between TVA and Jacobs; and (2) Defendants were required by law and the EPA to disclose such leaks [Doc. 59-1 ¶ 242].  These conclusory legal assertions, however, are unadorned with any further factual enhancement necessary to survive even the liberal pleading standard of Fed. R. Civ. P. 8(a)(2).  Plaintiffs have not offered any factual allegations to support their claim that they were intended beneficiaries of the cleanup contract between the TVA and Jacobs.  *Cf. Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 68-72 (Tenn. 2001) (outlining difference between intended beneficiary of a contract that "may enforce a contract" and an incidental beneficiary that "acquires no right to enforce the contract."  (citations omitted)).

Nor have Plaintiffs herein pointed to any specific language from any law or EPA mandate establishing a duty on the part of Defendants to disclose the leaks—Plaintiffs make only the conclusory assertion that these sources mandate such disclosure.  *See Wenzel v. Knight*, No. 3:14-CV-432, 2015 WL 3466863, at *12 (E.D. Va. June 1, 2015) (a legal conclusion adds no factual basis to support a claim for purposes of a Rule 12(b)(6) motion to dismiss) Plaintiffs' Second Claim for Relief of their Amended Complaint will therefore be dismissed, as this claim is barred by the statute of limitations and has not been properly pleaded.

11

### 3. Intentional or Reckless Failure to Warn

Plaintiffs' third claim for relief is a claim for "Intentional or Reckless Failure to Warn" and alleges that Defendants should be liable for failing to warn the Plaintiffs (1) of the dangers of fly ash, and (2) of the more recent toxic leaks into Plaintiffs' groundwater [Doc. 59-1 ¶¶ 266-71]. As explained in the preceding section, Plaintiffs were either aware of or should have been aware of the dangers of fly ash as early as mid-2009, so Plaintiffs' third claim in this regard is barred by the statute of limitations. *See* T.C.A. § 28-3-105 ("The following actions shall be commenced within three (3) years from the accruing of the cause of action: (1) Actions for injuries to personal or real property . . . ."). As for Plaintiffs' allegation that Defendants intentionally or recklessly failed to warn Plaintiffs of more recent toxic leaks into Plaintiffs' groundwater, to the extent that Plaintiffs attempt to plead an "intentional failure to warn" claim on these facts, the Court fails to see how such a claim is different from Plaintiffs' fraudulent concealment claim that has been dismissed for Plaintiffs' failure to identify a duty of disclosure on Defendants' part. *See Saltire*, 491 F.3d at 527-28; *see also Roopchan*, 781 F. Supp. 2d at 652 ("'[F]raudulent concealment' . . . is committed when a party who has a duty to disclose a known fact or condition fails to do so . . . ." (internal quotation marks omitted)).

Regarding Plaintiffs' reckless failure to warn claim based on the recent toxic leaks into Plaintiffs' groundwater, Plaintiffs' own factual allegations in their Amended Complaint indicate that leaks and problems with the plant at issue have existed and have been ongoing since 2007 [Doc. 59-1 ¶¶ 25, 53-54, 56, 59, 64-65, 168, 260, 294, 336].

Moreover, Plaintiffs attribute the leaks to the 2009 to 2015 remediation process that attempted to remedy the 2008 spill affecting Plaintiffs' properties [*Id*., ¶¶ 74, 133, 336]. Had Plaintiffs exercised diligence in monitoring the spill's remediation process between 2009 and 2015 (for what Plaintiffs themselves call "the largest environmental disaster in United States history"), or engaged in post-remediation monitoring of their properties and groundwater, Plaintiffs would have discovered the effects of the allegedly deficient remediation process far earlier than they did. *See 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) ("[T]he sufficiency of a complaint turns on its 'factual content' requiring the plaintiff to plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing. The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct.'" (internal citations omitted)).

Because Plaintiffs, essentially by their own admission, would have discovered Defendants' alleged leakage of toxic chemicals into their groundwater since, at the latest, at the conclusion of the remediation process in 2015, had Plaintiffs exercised reasonable diligence in monitoring their own groundwater, Plaintiffs' reckless failure to warn claim is barred by the statute of limitations. *See Wyatt*, 910 S.W.2d at 857 ("Knowledge that an actionable injury has occurred does not require absolute knowledge of the particulars of the injury."); *see also Lutz*, 717 F.3d at 464 (dismissal on a motion under Rule 12(b)(6) is warranted if defendant meet its burden of showing that the allegations in the complaint affirmatively show that the claim is time-barred). Plaintiffs' Third Claim for Relief in their

13

Amended Complaint will therefore be dismissed, as Plaintiffs' intentional failure to warn claim is no different from its fraudulent concealment claim which has been dismissed and Plaintiffs' reckless failure to warn claim is barred by the statute of limitations.

### 4. Negligence

Plaintiffs' fourth claim for relief is for negligence [Doc. 59-1 ¶¶ 272-307]. As the Tennessee Supreme Court has outlined:

> In order to establish a prima facie claim of negligence, basically defined as the failure to exercise reasonable care, a plaintiff must establish the following essential elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause."

*Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009) (citations omitted). Review of Plaintiffs' negligence allegations reflects that Plaintiffs are attempting to recoup for losses attributable to the 2008 spill that they either knew about or should have known about through the exercise of reasonable diligence [Doc. 59-1 ¶¶ 272-307]. Plaintiffs do not dispute that their negligence claim is subject to a three-year statute of limitations. *See* T.C.A. § 28-3-105. Seemingly recognizing this, Plaintiffs instead argue that the toxic leaks into their groundwater occurring between 2017 and 2019 allow them to pursue a negligence claim [Doc. 80 pp. 15-19; Doc. 59-1 ¶¶ 1, 25, 64, 74, 133, 137, 155, 176, 178, 239, 265, 271, 294, 336, 351, 369]. Plaintiffs' negligence claim in this regard, however, is barred by the statute of limitations for the same reasons that Plaintiffs' reckless failure to warn claim is barred on that ground. Had Plaintiffs, through their own admission that the remediation process between 2009 and 2015 led to ongoing toxic leaks since that time, exercised

14

diligence in monitoring that remediation process, or engaged in post-remediation monitoring of their properties and groundwater, Plaintiffs would have discovered the toxic leaks into their groundwater far earlier than they did. Accordingly, Plaintiffs' Fourth Claim for Relief in their Amended Complaint will be dismissed, as it is barred by the statute of limitations.

### 5. Negligence Per Se

Plaintiffs' fifth claim for relief is for negligence per se [Doc. 59-1 ¶¶ 308-26]. Under Tennessee law, a plaintiff must establish three elements to recover on the basis of negligence per se: (1) defendant violated a statute or ordinance which imposes a duty or prohibits an act for the benefit of a person or the public; (2) the injured party was within the class of persons whom the legislative body intended to benefit and protect; and (3) the negligence was the proximate cause of the injury. *Glass v. Nw. Airlines, Inc.*, 761 F. Supp. 2d 734, 746 (W.D. Tenn. 2011) (citations omitted); *Smith v. Owen*, 841 S.W.2d 828, 831 (Tenn. Ct. App. 1992). Plaintiffs have made no attempt to expound on their conclusory assertions that Defendants violated the laundry list of the cited statutes and regulations; instead, Plaintiffs simply list roughly 30 statutes and regulations and assert that Defendants violated those statutes and regulations [Doc. 59-1 ¶¶ 308-26]. Furthermore, Plaintiffs have pleaded no facts asserting that the statutes and regulations that they allege Defendants violated are meant to benefit and protect them. Plaintiffs' negligence per se claim cannot be viewed as giving Defendants fair notice of what Plaintiffs' allegations are with regard to Defendants' alleged violations of the list of statutes and regulations. *See Weiland v.*

15

*Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) ("The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."); *Bickerstaff Clay Prods. Co., Inc. v. Harris Cty. By & Through Bd. of Comm'rs*, 89 F.3d 1481, 1484 n.4 (11th Cir. 1996) ("The complaint is a typical shotgun pleading, in that some of the counts present more than one discrete claim for relief.  Moreover, in some instances one cannot discern, with respect to a given claim for relief, the substantive rule giving rise to the claim." (internal citation omitted)); *Flayter v. Wis. Dep't of Corr.*, 16 F. App'x 507, 508 (7th Cir. 2001) ("A prolix and confusing complaint should be dismissed because it makes it difficult for the defendant to file a responsive pleading and for the court to conduct orderly litigation." (citation omitted)).

Plaintiffs' Fifth Claim for Relief in their Amended Complaint will therefore be dismissed, as Plaintiffs' claim in this regard is insufficiently pleaded.

### 6. Temporary Public Nuisance

Plaintiffs' sixth claim for relief is for temporary public nuisance [Doc. 59-1 ¶¶ 327-48].  Plaintiffs, however, have not properly alleged an adequate ground for relief in this regard.

Plaintiffs begin this claim by identifying T.C.A. §§ 29-3-101(b) and 110 as the basis for their temporary public nuisance claim.  T.C.A. § 29-3-101(b) states:

> Any person who uses, occupies, establishes or conducts a nuisance, or aids or abets therein, and the owner, agent or lessee of any interest in any such

16

> nuisance, together with the persons employed in or in control of any such nuisance by any such owner, agent or lessee, is guilty of maintain a nuisance and such nuisance shall be abated as provided hereinafter.

Plaintiffs appear to be seeking a statutory remedy provided by the Tennessee General Assembly allowing them to abate the purported nuisance created by Defendants and receive the "costs of public services required to abate or manage the nuisance, including, but not limited to, law enforcement costs, if any, caused by the public nuisance." T.C.A. § 29-3-110(c). The term "nuisance," however, for the purpose of exercising that remedy, is defined to include:

> (A) Any place in or upon which lewdness, prostitution, promotion of prostitution, patronizing prostitution, unlawful sale of intoxicating liquors, unlawful sale of any regulated legend drug, narcotic, other controlled substance analogue, any sale or possession with intent to sell of drug paraphernalia, as defined by § 39-17-402, unlawful gambling, any sale, exhibition or possession of any material determined to be obscene or pornographic with intent to exhibit, sell, deliver or distribute matter or materials[,] . . . quarreling, drunkenness, fighting, breaches of the peace are carried on or permitted, and personal property, contents, furniture, fixtures, equipment and stock used in or in connection with the conducting and maintaining any such place for any such purposes;
>
> (B) A criminal gang . . . that regularly engages in gang related conduct. . . .; or
>
> (C) Any place in or upon which a person knowingly takes, by defrauding, or conspiring or colluding with, the recipient of public assistance benefits funded in whole or in part by the federal government or state of Tennessee, any part of such benefits knowing the person is not authorized or entitled by law to receive the portion of benefits taken . . . .

T.C.A. § 29-3-101(a)(2).

Instead of identifying the statutory definition of nuisance they rely upon for their statutory public nuisance claim, however, Plaintiffs cite to the common law definition of

nuisance [Doc. 59-1 ¶ 336; Doc. 80 p. 25; Doc. 81 pp. 21-22]. Per T.C.A. § 29-3-101(a)(2), the remedies provided by T.C.A. § 29-3-110(c) are only available if a plaintiff pleads a nuisance as defined by Tennessee statutes, not the common law. Plaintiffs do not identify any statutory definition of nuisance that allows them to maintain their statutory nuisance claim. Additionally, Plaintiffs point to no authority for the common law definition of nuisance to support their statutory nuisance claim. Plaintiffs cannot piecemeal together elements of separate and distinct causes of action to form one cause of action. Although Plaintiffs are free to plead alternative causes of action, their Amended Complaint does not provide the requisite fair notice to Defendants that this is what they have done. *See Zuanich v. Hankook Tire Am. Corp.*, No. 3:18-CV-159-WKW, 2018 WL 6709466, at *2 (M.D. Ala. Dec. 20, 2018) ("'Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings . . . .' [One] type[] of shotgun pleading[] . . . 'commits the sin of not separating into a different count each cause of action or claim for relief . . . .'" (quoting *Weiland*, 792 F.3d at 1320-23)).

Plaintiffs' Sixth Claim for Relief in their Amended Complaint will therefore be dismissed, as Plaintiffs' claim in this regard suffers from pleading deficiencies.

### 7.    Offensive Non-Mutual Collateral Estoppel

Plaintiffs' seventh claim for relief asserts offensive non-mutual collateral estoppel [Doc. 59-1 ¶¶ 349-75]. Although Tennessee's highest court has referred to the theory of collateral estoppel as a "claim[,]" that same court has identified that collateral estoppel is simply a legal tool that allows a party to prevail on a cause of action and is not a legitimate

18

cause of action in and of itself. *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016). Specifically, the Tennessee Supreme Court has explained that "[c]ollateral estoppel is an issue-preclusion doctrine developed by the courts[,]"and

> Res judicata and collateral estoppel are related doctrines. Res judicial bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit. Collateral estoppel bars a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit.

*Id.* at 107, n.6; *see generally* Lawrence A. Pivnick, *Tennessee Circuit Court Practice*, § 27:14 (Dec. 2019 update) (outlining collateral estoppel doctrine). In other words, there is no such thing as a substantive claim for offensive non-mutual collateral estoppel; rather, collateral estoppel is a tool Plaintiffs may use to establish the conclusiveness of issues related to legitimate substantive causes of action. Plaintiffs' Seventh Claim for Relief in their Amended Complaint will therefore be dismissed, as there is no such thing as a substantive cause of action for offensive non-mutual collateral estoppel under Tennessee law.

### C. Remaining Matters

Because all of Plaintiffs' claims will be dismissed, all remaining motions [Docs. 47, 55, 59] will be denied as they are moot. The Court also notes that, because the core basis for the dismissal of all of Plaintiffs' claims is a deficient pleading, all of Plaintiffs' claims here will be dismissed without prejudice. *See United States ex rel. Griffith v. Conn*, 117 F. Supp. 3d 961, 988 (E.D. Ky. 2015) (noting that dismissal without prejudice was proper because the case involved numerous complex issues and theories and the opinion was the

19

first time that the Court had detailed the deficiencies in the pleadings) (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003)).

## IV. CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss [Docs. 62, 64] will be **GRANTED**, and all other motions [Docs. 47, 55, 59] will be **DENIED AS MOOT**. All of Plaintiffs' claims will be **DISMISSED WITHOUT PREJUDICE**. A separate order will follow.

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE